## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:14-cv-01736-JLK

**DALE SNYDER, et al.**,

      Plaintiffs,

v.

**ACORD CORPORATION, et al.**,

      Defendants.

---

### MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS (DOC. 390)

---

**Kane, J.**

### Introduction

The Plaintiffs in this action are a handful of insured homeowners who lost their homes and have brought a class action including RICO, antitrust, and a raft of state law claims against their insurance companies, as well as scores of other insurers and related organizations, related to those losses. The parties have now fully briefed several motions to dismiss on various grounds. This opinion addresses the Defendants' main motion to dismiss (joined in by all defendants), which argues that each of Plaintiffs' 23 claims for relief should be dismissed under Rule 8 and Rule 12(b)(6). Doc. 390. For the reasons that follow, the Defendants' motion is **GRANTED**.[1]

### Factual Background

Plaintiffs are 17 homeowners (and one estate of a deceased homeowner) whose Colorado homes were destroyed by fires in February and June of 2012, and one plaintiff whose home was destroyed by flood damage in September of 2013. *See* Third Amended Complaint ("TAC")

---

[1] After review of the parties' briefs, I have concluded that this motion is suitable for resolution without oral argument. *See* Doc. 432 at p. 7; Doc. 467.

(Doc. 380) ¶¶ 10-27, 637, 666, 700, 726, 747, 767, 792, 817, 835, 859, 907.  The named Plaintiffs had homeowner's insurance policies issued by ten defendants Shelter Mutual Insurance Company, American Family Mutual Insurance Company, United Services Automobile Insurance, State Farm Fire and Casualty Company, Liberty Mutual, Country Mutual Insurance Company, Allstate Insurance Company, Colorado Farm Bureau, Nationwide Mutual Insurance Company, and United Fire & Casualty Company ("Selling Defendants") at the time of their losses.  *See* TAC ¶¶ 626, 658, 685, 722, 736-37, 759, 785, 811, 827-28, 852, 878-79.

Plaintiffs allege that their claims were mishandled in various ways and that they were misled regarding the terms of their insurance policies and how those terms would be applied.  *See generally* TAC ¶¶ 621-972.  In general, Plaintiffs allege that they were systematically and purposefully underinsured, *see, e.g.*, TAC ¶¶ 653, 709-10, 726, 756-57, 776, 791, 808, 822, 837, and unaware that they would have to repair or replace their homes within a short time frame in order to receive the "Actual Cash Value" of their property, *see, e.g.*, TAC ¶¶ 640, 668, 819, 844.  Plaintiffs also complain that they did not know that "Actual Cash Value" would be defined as the cost of repair or replacement less applicable depreciation.  *See, e.g.*, TAC ¶¶ 392, 395, 459, 802, 842, 898, 910, 917-18, 920.  Plaintiffs have numerous other complaints about how their claims were processed and handled.  *See, e.g.*, TAC ¶¶ 643, 677-78, 694, 709, 725, 775, 801, 873.

In addition to the named Plaintiffs' claims against their insurers, Plaintiffs also bring their claims against 103 other defendants, including insurance companies, holding companies, a consulting firm, and a standard setting organization for the insurance industry known as ACORD (the "Non-Selling Defendants").  *See* TAC ¶¶ 28-140.  Plaintiffs allege a "monumental" conspiracy centered around the ACORD organization, with the scores of Non-Selling Defendants "involved in an enterprise with ACORD as either members, strategic partners, associates, or non-

member associates, and [as] stakeholders in the enterprise." TAC ¶ 151; *see id*. at ¶ 1179. Although Plaintiffs do not directly allege that ACORD defines the terms or sets any standards in insurance contracts about which the named Plaintiffs complain, *see* TAC ¶¶ 184-223, they allege that the ACORD organization served as a vehicle for a conspiracy to define and establish those standards. *See* Doc. 447-1 at 27.

## **Procedural Background**

Plaintiffs filed their Complaint in this action on June 21, 2014, and a First Amended Complaint on July 11, 2014. Docs. 1 & 18. On August 19, 2014, Defendants United Services Automobile Association and USAA Casualty Insurance Company moved to dismiss the First Amended Complaint on the grounds that it failed to comply with Rule 8. *See* Doc. 223. On September 4, 2014, Plaintiffs filed a response to this motion offering to redraft the First Amended Complaint in order to make it "more streamlined," and so that the "facts of the background allegations can be tied more clearly to the different claims for relief." Doc. 291 at 30-31. In light of these representations, the Court ordered the First Amended Complaint stricken and granted leave for Plaintiffs to file a Second Amended Complaint. Doc. 304. On October 14, 2014, Plaintiffs filed their Second Amended Complaint, *see* Doc. 339, and on November 24, 2014 Plaintiffs filed a stipulated motion to file a Third Amended Complaint in order to make numerous corrections. *See* Docs. 376, 377. This motion was granted and Plaintiffs' Third Amended Complaint ("TAC") was filed on November 25, 2014. Doc. 380.

On December 4 and 5, 2014, certain defendants filed numerous motions to dismiss the Third Amended Complaint on various bases. *See* Docs. 389-392, 394-98, 400, 402, 406, 410-12; *see generally* Doc. 419. In particular, certain defendants who do not sell insurance in Colorado moved to dismiss for lack of personal jurisdiction. *See* Doc. 389. Defendant State Farm filed a

motion to dismiss on behalf of all Defendants (*see* Doc. 419 at 1), arguing that the TAC fails to comply with Rule 8 and fails to state any claim for relief.  *See* Doc. 390.  Certain defendants filed a motion to dismiss arguing that the Plaintiffs have failed to state any claim for relief against them because they had no contract, transaction, or relationship with the named plaintiffs at all.  *See* Doc. 392.  Plaintiffs filed an omnibus response to the various motions to dismiss on June 2, 2015, *see* Doc. 445, and Defendants filed their replies on June 15, 2015.  *See* Docs. 458-462, 464-65.  This opinion addresses State Farm's motion to dismiss, which argues that each of Plaintiffs' 23 claims for relief should be dismissed under Rule 8 and Rule 12(b)(6).  Doc. 390.

## **Analysis**

### I.     **Rule 8**

Rule 8 requires that Plaintiffs' complaint  provide "a short and plain statement of the claim showing that the pleader is entitled to relief," with allegations that are "simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2), (d)(1).  I find that Plaintiffs' 260 page, 1,363 paragraph TAC fails to meet this standard.

In the first place, the sheer length of Plaintiffs' complaint (260 pages and 1,363 numbered paragraphs) suggests that Plaintiffs have failed to comply with Rule 8.  *See Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007) (affirming dismissal of 99-page complaint because "[i]n its sheer length, [plaintiff] has made her complaint unintelligible 'by scattering and concealing in a morass of irrelevancies the few allegations that matter'" (citation omitted)); *Schupper v. Edie*, 193 F. App'x 744, 745-46 (10th Cir. 2006) (unpublished) (affirming dismissal of 38-page complaint plus 120 pages of exhibits as "overly long" and "prolix"); *Luciano v. Perez,* No. 06-cv-01284, 2007 WL 1306476, at *2 (D. Colo. May 3, 2007).  While it is true that "in complex cases, the complaint will be more extended and may require greater particularity," *In re:*

*Williams Sec. Litig.*, 339 F. Supp. 2d 1242, 1268 (N.D. Okla. 2003), as Defendants point out, there are numerous sections of the TAC which are of questionable relevance to any of the claims asserted.  *See, e.g.*, TAC ¶¶ 235-42, 352, 385, 599-600 (discussing the Enron bankruptcy and California electricity market); *id*. at ¶¶ 577-78 (Australian floods and brush fires); *id*. at ¶¶ 525-564 (promulgation of New York regulations on disclosure of insurance sales agents' compensation); *id*. at ¶¶ 604-620 (describing a 1997 felony insurance fraud case involving State Farm).  In addition, there is critical information missing from the TAC – although Plaintiffs bring breach of contract claims, *see* TAC ¶¶ 1249-1302, and allege that certain terms of their policies were unclear, *see* TAC ¶¶ 1218, 1240, they nowhere attach or quote their insurance contracts themselves, which are central to their claims against the Selling Defendants.

More importantly, the TAC fails to satisfy Rule 8 because of its repeated reference to all 113 "Defendants" as a group.  The 113 Defendants include not only the 10 Selling Defendants who sold insurance policies to the named Plaintiffs, but also a consulting firm, *see* TAC ¶ 87, scores of other insurance companies, holding companies, and the ACORD organization itself. *See* TAC ¶ 28-140.  Rather than "explain what each defendant did to [each plaintiff]; when the defendant did it; [and] how the defendant's action harmed [each plaintiff]," *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007), Plaintiffs repeatedly bring their claims against "Defendants" as an undifferentiated group.  *See, e.g.*, TAC ¶¶ 1178, 1196, 1218. For example, although only a small minority (10 out of 113) of the Defendants are alleged to have sold one of the named Plaintiffs an insurance policy, Plaintiffs repeatedly state allegations that do not make sense for the Non-Selling Defendants.  *See, e.g.*, TAC ¶ 1252 ("Defendants informed Plaintiffs at the time of the claim that the actual cash value of the property was the true value of their property.");¶ 1285 ("Defendants breached their obligations under the policy by

valuing the properties for loss adjustment purposes by a methodology or methodologies independent of and without regard for the Stated Amount for which the properties were insured"); ¶ 1309 ("Defendants and Plaintiffs were parties to a valid property and casualty insurance contract."). This type of group pleading violates Rule 8. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008); *Chambers v. Cooper*, No. 13–cv–00393, 2014 WL 561371, at *1 (D. Colo. Feb. 12, 2014).

In addition, Plaintiffs' TAC violates Rule 8 through repeated use of impermissible shotgun pleading. Each of Plaintiffs' claims for relief incorporates by reference the whole of their 1,363 paragraph Complaint. *See, e.g.*, TAC. ¶¶ 1085, 1105, 1118, 1134, 1147, 1164, 1176, 1183, 1195, 1207, 1217. To take but one example, Plaintiffs' claim for negligent hiring incorporates by reference the balance of the Complaint. *See* TAC ¶ 1316. But the Court has been unable to locate any factual allegations whatsoever in the TAC regarding the hiring of any specific employees of any of the 113 defendants. Similarly, Plaintiffs' claim for outrageous conduct incorporates the entire TAC and alleges that "[t]he above-described actions of the Defendants were extreme and outrageous." TAC ¶ 1324. This type of shotgun pleading, which forces the Defendants and the Court to wade through hundreds of paragraphs of factual allegations in search of those that are alleged to support the various elements of 23 distinct claims for relief, violates Rule 8. *See Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1243 (D. Colo. 2014); *Gen. Steel Domestic Sales, LLC v. Steelwise, LLC*, No. 07–cv–01145, 2008 WL 2520423, at *3 (D. Colo. June 20, 2008); *Houston v. Mile High Adventist Acad.*, 846 F. Supp. 1449, 1454 (D. Colo. 1994).

Even though I find that the TAC fails to comply with Rule 8, this opinion will proceed to analyze the merits of Plaintiffs' claims. *See Houston*, 846 F. Supp. at 1454.

II.     **Claims 1-5 – RICO and the COCCA**

Plaintiffs' first five claims for relief allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-1968, and the Colorado Organized Crime Control Act ("COCCA"), C.R.S. § 18-17-101-109.

a.  **Rule 9(b)**

The elements of a civil RICO claim are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity.  18 U.S.C. § 1962(a), (b), & (c); *see Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006).  "Racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) as any "act which is indictable" under federal law and specifically includes mail fraud and wire fraud.  *Tal*, 453 F.3d at 1261.  Mail fraud requires that the plaintiff allege "(1) the existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations or promises, and (2) use of the United States mails for the purpose of executing the scheme."  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 892 (10th Cir. 1991).  The particularity requirement of Rule 9(b) applies to claims of mail and wire fraud. *Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002).  Thus, "a complaint alleging fraud [must] 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"  *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (citation omitted).

Defendants argue that Plaintiffs have failed to satisfy Rule 9(b) with respect to the required predicate acts of mail and wire fraud because they allege only "millions" of transmissions of ACORD "standards," "best practices," advertising, and policies to consumers, and fail to "identify which defendants were responsible for what transmissions or mailings" or to "provide any information as to what was said and when and how it was supposedly fraudulent."

Doc. 390 at 26; *see* TAC ¶ 209, 272, 304, 316-17, 562, 576, 1093-94.   Defendants further argue

that the section of the TAC dealing with the insurance claims of the named Plaintiffs "do not

identif[y] any particular act of mail or wire fraud by any Defendant, much less specif[y] the

number of mailings or wires, the precise dates, and how they further the scheme, as required to

state a RICO mail or wire fraud claim."   Doc. 390 at 28.

Plaintiffs respond that they have alleged the existence of  a "scheme . . . to defraud"

because they allege that Defendants, "through knowledgeable participation in the ACORD

standards and framework," have engaged in concerted action to confuse and defraud insurance

purchasers.  Doc. 447-1 at 5.  Plaintiffs also argue that because they allege "collective action" in

producing the standards, further specificity as to the role of each Defendant is not required.  *Id*. at

8.  With respect to the second element of mail fraud, Plaintiffs allege that ACORD "support[s] its

standard framework and transactions through routine mailings and wires," and direct the Court to

"Appendix 12" with "regard to the specifics."  *Id*. at 9-10, 15.  Plaintiffs also argue that further

specificity with regarding to the individual Defendants is not required because of Plaintiff's

allegations of a conspiracy under *Pinkerton v. United States*, 328 U.S. 640 (1946).  *Id*. at 15-16.

Finally, Plaintiffs appear to suggest that they need not plead the specific timing, content, and

authorship of the alleged misrepresentations under Rule 9(b).  *Id*. at 16-20.

I find that the Plaintiffs have not satisfied Rule 9(b) in their allegations of mail and wire

fraud.  Plaintiffs' vague allegations are plainly insufficient because they do not specify the "who,

what, when, where and how of the alleged fraud."  *United States ex rel. Schwartz v. Coastal

Healthcare Group, Inc.*, 232 F.3d 902 (10th Cir. 2000) at *3 (unpublished); *see, e.g.*, TAC ¶¶

209 (alleging "multiple millions of transactions and communications transmitted through wires,

mail, and couriers over the past ten years"), ¶ 304 (alleging "other forms of wire transfer that

have transmitted these standards through millions of enterprise transactions and enterprise communications"), ¶ 316 (alleging "millions of ACORD standard forms and standard communications sent between enterprise participants"), ¶¶ 272, 317, 562, 576, 1093-94.

Plaintiffs' response brief attaches an "Appendix 12" which purports to provide more detail "with regard to the specifics" of Plaintiffs' fraud allegations.  Doc. 445-12.  But the vast majority of these "specifics," to the extent they describe mail or wire communications by the Defendants at all (and many do not, *e.g.*, TAC ¶¶ 641, 677, 697, 707, 708, 712, 818, 865, 914, 947), merely reference ordinary letters and emails sent by the Selling Defendants as part of the processing of the named Plaintiffs' insurance claims.  *See, e.g.*, TAC ¶¶ 640 (letter from defendant informing plaintiffs that they "needed to repair or replace within two years to get above the Actual Cash Value of the property"); ¶ 668 (plaintiff received "an estimate sent to her by electronic mail"); ¶ 771 (plaintiffs were "sent payouts for cleanup and tree damage"); ¶ 797 (defendant sent plaintiff a copy of her "policy via FedEx"); ¶¶ 673, 695, 751, 766, 802, 824, 845, 867, 916.  Plaintiffs simply do not allege, and appear not to dispute that they have not alleged, that anything about these communications was fraudulent.  In fact, under Plaintiffs' own theory of the case, the deception occurred regarding the meaning of various terms in their insurance policies, and by the time Plaintiffs had suffered their losses and were in the process of pursuing their claims, that deception had already been accomplished.  *See, e.g.*, TAC ¶ 391.

Plaintiffs' Appendix 12 does include a very few vague accusations of misrepresentations. *See, e.g.*, TAC ¶ 698 (USAA "insisted all was fine"); ¶ 699 ("people on the telephone . . . insisted everything was in order"); ¶ 743 (plaintiff "spoke with a woman who assured her that they had adequate coverage").  These few allegations plainly do not meet the requirements of Rule 9(b).

In addition, Plaintiffs' Appendix 12 identifies "predicate acts of omission" with respect to each named Plaintiff. *See* Doc. 445-12. With respect to what should have been disclosed, Plaintiffs reference the section of their TAC describing insurance industry practices related to replacement cost and underinsurance. In particular, Plaintiffs allege that Defendants purposefully underinsure homeowners, do not disclose the requirement that a home be rebuilt within a short time frame to obtain the "replacement cost," or how replacement costs and actual cash values are calculated and depreciated. *See* TAC ¶¶ 401-481. For each named Plaintiff, Plaintiffs then identify "Who" should have made the disclosure and "When" by citing the various paragraphs of their TAC identifying the insurance agents and representatives with whom each named Plaintiff dealt and the circumstances of the handling of their claims. *See* Doc. 445-12.

With respect to these alleged omissions, at least one court in this district has suggested that Plaintiffs may plead a RICO violation based on a "scheme to defraud," where one "person defrauded another, yet did so without actually making any affirmative misrepresentation." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1078 (D. Colo. 2012); *see U.S. v. Cronic*, 900 F.2d 1511, 1513-14 (10th Cir.1990). However, where violation of the mail fraud statute is based on omissions rather than affirmative misrepresentations, "there can be no fraud absent a duty to speak." *United States v. Sharp*, 749 F.3d 1267, 1280 (10th Cir. 2014); *see United States v. Gallant*, 537 F.3d 1202, 1228 (10th Cir. 2008). Plaintiffs allege that Defendants' agents failed to explain or disclose various definitions and policy terms, *see* TAC ¶¶ 401-481, but Plaintiffs do not cite any source of a duty to disclose this information. *See BancOklahoma Mortgage Corp. v. Capital Title Co.*, 194 F.3d 1089, 1105 (10th Cir. 1999) ("[A] duty to disclose arises only when a confidential relationship exists between the parties, i.e., a fiduciary relationship, or when one party has superior information not reasonably available to the

other."); *Kennedy v. Jackson Nat. Life Ins. Co.*, No. C 07-0371 CW, 2010 WL 4123994, at *10

(N.D. Cal. Oct. 6, 2010).  Accordingly, I find that Plaintiffs have failed to plead predicate acts of

mail or wire fraud with particularity under Rule 9(b) as required to state a RICO claim.

### b.  Requirement of purpose and relationships in the enterprise

Defendants argue that Plaintiffs have failed to plead the structural elements of "a purpose,

relationships among those associated with the enterprise, and longevity sufficient to permit these

associates to pursue the enterprise's purpose" required for an association-in-fact enterprise under

18 U.S.C. § 1961(4).  *Boyle v. United States*, 556 U.S. 938, 946 (2009).  Defendants argue that

Plaintiffs have not named any insurer Defendant, explained its role, or provided any detail

whatsoever as to any particular Defendant's role in the alleged enterprise.  Doc. 390 at 30-31.

Plaintiffs respond that the enterprise element need not be pled with particularity.  Doc.

447-1 at 22.  Plaintiffs refer to their antitrust arguments to argue that they have alleged that

"Defendants function as a unit and engage in coordinated behavior," and are therefore an

enterprise.  *Id*. at 23-24.  Plaintiffs also allege that despite the lack of detail in the alleged

relationships between Defendants and the enterprise, "there are relationships with a common

goal and continuity."  *Id*. at 27.

I find that Plaintiffs have not adequately pled an association-in-fact enterprise under 18

U.S.C. § 1961(4).  Plaintiffs have alleged that the Defendants "are involved in an enterprise with

ACORD as either members, strategic partners, associates, or non-member associates, and are

stakeholders in the enterprise."  TAC ¶ 151.  Plaintiffs have also alleged that the Defendants

form a "network consisting of insurers, reinsurers, agencies, brokers, businesses, consulting

firms, *de facto* partnerships, contractual partnerships, trade groups, associations, associations-in-

fact, lobbies, solution providers and others who have derivative business dealings with those

connected to the network," TAC ¶ 1048, that the enterprise contains a "sub-network" of "recognized industry leaders," TAC ¶ 1049, and that those industry leaders "participate in the conduct of the enterprise through standard creation and the implementation of 'best practices.'" TAC ¶ 1051.  Plaintiffs assert that the "enterprise found a nucleus . . . in Defendant ACORD," that members of ACORD "invest[ed] in ACORD in multiple direct and indirect ways," and that "[o]ther participants have made donations to ACORD and received the benefit of the use of the ACORD features made possible by the donations."  TAC ¶¶ 1053-54.

I find that Plaintiffs have not sufficiently alleged the elements of "purpose" and "relationships among those associated with the enterprise."  *Boyle*, 556 U.S. at 946.  As Defendants indicate and as Plaintiffs acknowledge, not all of the Defendants are members of ACORD.  *See* TAC ¶ 151; Doc. 458 at 4 n.3.  Plaintiffs do not explain what it means to be a "strategic partner," "associate," or "non-member associate" of ACORD, never mind of the larger enterprise itself, nor do they provide any further specificity as to which of the 113 Defendants fit into which category.  In fact, Plaintiffs make no allegations whatsoever regarding any particular Defendant, any particular Defendant's relationship to ACORD, or to any other particular Defendant.  As indicated, Plaintiffs do not even allege which Defendants are or are not members of ACORD itself.  *See* TAC ¶ 151.

Plaintiffs' arguments that they have sufficiently alleged the "purpose" and "relationship" elements are unavailing.  Plaintiffs first argue that their antitrust allegations establish that "Defendants function as a unit and engage in coordinated behavior."  Doc. 447-1 at 23.  For the reasons given below in connection with Plaintiffs' antitrust arguments, I find that Plaintiffs' antitrust arguments do not establish agreement or concerted action.  Plaintiffs then argue, in reliance on *Boyle*, without citation to their TAC or to other authority, that they "have alleged . . .

the nature of ACORD as a community, an association, and as the center to which each named

Defendant bears relation, and thus to each other." *Id*. at 27.  Plaintiffs point to their allegations

that each Defendant is a "participant in the ACORD community," and assert that they have

"identif[ied] a number of categories of participation," but they do not explain what these

categories mean or provide any allegations connecting any particular Defendant to any particular

category. *Id*. at 26 n.48.  This is simply not enough to allege "relationships among those

associated with the enterprise" under *Boyle*.  *See, e.g.*, *BWP Media USA Inc. v. Hollywood Fan

Sites, LLC*, 69 F. Supp. 3d 342, 360 (S.D.N.Y. 2014) (finding relationships element not satisfied

where "Plaintiffs have failed to provide any information whatsoever regarding the Defendants'

respective roles in the enterprise" and made no "mention of the roles each Defendant played and

the actions they took"); *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11 CIV.

7801, 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012); *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F.

Supp. 2d 297, 306-307 (S.D.N.Y. 2010).

### c.   Violations of 1962(a) & (b)

Defendants argue that Plaintiffs have failed to plead violations of 18 U.S.C. § 1962(a),

which prohibits the use or investment of income derived from a pattern of racketeering activity

"in acquisition of any interest in, or the establishment or operation of" an enterprise engaged in

interstate or foreign commerce, or § 1962(b), which prohibits "acquir[ing] or maintain[ing],

directly or indirectly, any interest in or control of any enterprise which is engaged in, or the

activities of which affect, interstate or foreign commerce" through a pattern of racketeering

activity.   18 U.S.C. § 1962(a) & (b).  Defendants argue that Plaintiffs' allegations that they are

"stakeholders in the enterprise" and "own a stake in an information model provided by and

managed by ACORD," *see* TAC ¶¶ 1107, 1055, are conclusory and do not demonstrate that

Defendants acquired any such interest "through a pattern of racketeering activity" as required by sections 1962(a) and (b).  Doc. 390 at 33-34.  Defendants also argue that allegations that certain Defendants "invest[ed] in companies and other entities that were involved in the conspiracy and racketeering activity," TAC ¶ 1123, does not show income derived from that activity, as opposed to other income, was used to make any such investment.  Doc. 390 at 34; Doc. 458 at 16-17.

Plaintiffs argue that they have alleged that Defendants obtain profits by means of racketeering through their mail and wire fraud allegations, that the Defendants use those profits to increase their "float" (reserves used for investment, *see* Doc. 447-1 at 36), and that the holding and life insurance company defendants also invest those proceeds in support of their subsidiaries. Doc. 447-1 at 35-37.  Plaintiffs also allege that Defendants invested racketeering income "in the acquisition of an interest in, or the establishment or operation of, the enterprise in question." TAC ¶ 1128.  With respect to 1962(b), Plaintiffs argue that "'stakes' have been gained through implementation of the ACORD standards that include deceptive features."  Doc. 447-1 at 40.

### i. <u>1962(a)</u>

I find that Plaintiffs have not alleged a violation of 1962(a).  In the first place, Plaintiffs have not alleged with any specificity what it means to use profits acquired by way of Defendants' allegedly deceptive practices to acquire a "stake" in the alleged enterprise.  ACORD itself is a non-profit organization, TAC ¶ 28, and the larger enterprise that Plaintiff alleges is made up of 113 various organizations, including property insurers, life insurers, holding companies, and at least one consulting firm.  *See* TAC ¶¶ 28-140.  Plaintiffs do not explain how the Defendants used profits from their allegedly deceptive practices to acquire a "stake," or what such a "stake" would mean, in such a large and diverse collection of corporate entities.

More importantly, Plaintiffs' 1962(a) claims fail because they have failed to allege any connection whatsoever between Defendants' acquisition of a "stake" in the alleged enterprise and their injuries. "[A] plaintiff seeking civil damages for a violation of section 1962(a) must plead facts tending to show that he was injured *by the use or investment of racketeering income*. Injury from the racketeering acts themselves is not sufficient because section 1962(a) does not prohibit those acts." *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1149 (10th Cir. 1989) (emphasis added). Plaintiffs were injured, if at all, when they were misled regarding the terms of their insurance policies and in the handling of their insurance claims. *See* TAC ¶¶ 621-972. Plaintiffs have not alleged that Defendants' use of these ill-gotten profits to acquire "a greater share in the stock market by means of the acquisition and retention of 'float," TAC ¶ 1121, or to "invest[] in companies and other entities that were involved in the conspiracy and racketeering activity," TAC ¶ 1123, bear any relationship to their injuries. *See Brittingham v. Mobil Corp*., 943 F.2d 297, 305 (3d Cir. 1991) (rejecting 1962(a) claim where "Plaintiffs have neither alleged nor demonstrated a connection with the use or investment of racketeering income other than the normal reinvestment of corporate profits"); *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1188 (3d Cir. 1993) ("[T]he plaintiff must allege an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate acts themselves."); *Marlow v. Allianz Life Ins. Co. of N. Am.*, No. 08-cv-00752, 2009 WL 1328636, at *4 (D. Colo. May 12, 2009) (dismissing 1962(a) claim where "Plaintiff makes no allegations—conclusory or otherwise—that he was injured 'by the use or investment of racketeering income.'").

### ii. <u>1962(b)</u>

Plaintiffs' § 1962(b) claims fails for similar reasons. "To state a claim under section 1962(b), the plaintiff must allege the defendant (1) acquired or maintained an interest in or

control of (2) an enterprise engaged in interstate commerce (3) through a pattern (4) of racketeering activity." *Tal v. Hogan*, 453 F.3d 1244, 1268 (10th Cir. 2006).  As discussed in connection with Plaintiffs' 1962(a) allegations, *see supra*, Plaintiffs have not explained what it means to use profits gained by means of the allegedly deceptive practices to "acquire[] or maintain[] and interest in or control of" the alleged enterprise-in-fact.  *See* TAC ¶ 1107.[2]

Even if Plaintiffs had properly alleged that Defendants used profits gained by the allegedly deceptive practices to acquire "an interest in or control of" the enterprise, their 1962(b) claims fail like their 1962(a) claims because they have not alleged that the acquisition of that interest, as opposed to the underlying predicate acts, caused them any injury.  *See Tal*, 453 F.3d at 1268 ("As with other section 1962 claims, the injury [in a 1962(b) claim] must be attributable to the prohibited action."); *Wood v. World Wide Ass'n of Specialty Programs & Sch., Inc.*, No. 2:06-CV-708 CW, 2011 WL 3328931, at *4 (D. Utah Aug. 2, 2011) (rejecting 1962(b) claim where "Plaintiffs fail to allege facts showing how *such acquisition or control itself* could plausibly have harmed any of them" (emphasis added)).

### iii.  **1962(c)** [3]

Defendants also argue that Plaintiffs have failed to allege that Defendants "participate in the operation or management" of the alleged RICO enterprise, as required to state a claim under § 1962(c).  Doc. 390 at 32; *see* TAC at ¶ 1051.  Plaintiffs respond that Defendants have

---

[2] The Plaintiffs do allege that certain "holding companies and life insurance companies connected to the alleged schemes acquired an interest in the enterprise by knowingly investing in companies and other entities that were involved in the conspiracy and racketeering activity."  TAC ¶ 1068.  In addition to being vague, conclusory, and applying to only some unspecified defendants, these allegations do not meet the causation requirement of 1962(b), as discussed below.

[3] It is unclear against which Defendants Plaintiffs bring their 1962(c) claims.  Plaintiffs state that the claim is brought against 10 specific defendants, "along with any other Defendants that assisted or took part in the mail and wire fraud alleged in this Claim for Relief."  TAC ¶ 1086; *see* Doc 389 at 12-13. Plaintiffs response adds to the confusion by stating that the "use of the term '1962(c) Defendants' was a typographical error," and by suggesting that "the claims for relief themselves support a claim against all of the Defendants."  Doc. 445-11 at 4-5.

participated in a "scheme to defraud," and again reference their various general ACORD

allegations, including the assertion that "each member's voice is present in all that ACORD

does."  Doc. 447-1 at 31; *see* TAC ¶ 168.

18 U.S.C. § 1962(c) makes it illegal "for any person employed by or associated with any

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a

pattern of racketeering activity."  18 U.S.C. § 1962(c).  To survive a Rule 12(b)(6) motion,

Plaintiffs must allege that the Defendants "participated in the operation or management of the

RICO enterprise."  *BancOklahoma Mortgage Corp.*, 194 F.3d at 1100.

I find that Plaintiffs have failed to state a 1962(c) claim, because Plaintiffs have not

alleged that Defendants "participate in the operation or management" of the alleged enterprise

within the meaning of § 1962(c).  In arguing that they have satisfied this requirement, Plaintiffs

cite various of their vague ACORD related allegations, *e.g.*, TAC ¶ 169 ("ACORD members

vote on the nature of the standards"); ¶ 165 ("[M]embership in ACORD means that the

participant's interests are represented in the standards"); ¶ 168 ("[A] member's voice is present

in all ACORD does"); ¶ 166 ("ACORD membership . . . entails collaboration, networking, and a

shared vision"); ¶ 163 (ACORD volunteers "help with the development of 'standards'"); *see*

Doc. 447-1 at 30-32.

These allegations fail to meet the requirements of § 1962(c), for several reasons.  First,

the fact that ACORD members have an opportunity to provide input regarding the standards and

ultimately vote on those standards does not mean that members "participate in the operation or

management" of ACORD.  *BancOklahoma Mortgage Corp.*, 194 F.3d at 1100.  Developing

standards for "electronic data interchange between insurers, reinsurers, and insurance agents and

brokers," Doc. 391 at 2, is but one of ACORD's (plainly legitimate) business activities. *See, e.g.*, TAC ¶ 183. Plaintiffs have not alleged that Defendants had any role whatsoever in the governance or management of ACORD itself. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (1962(c) liability requires defendant "participate in the operation or management of the enterprise itself"); *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) (1962(c) liability requires "an element of direction" and "simply being involved" will not suffice). At best, Plaintiffs have alleged that Defendants were involved in one aspect of ACORD's business, namely, its development of standards. This is not sufficient to create 1962(c) liability. *See Marlow v. Allianz Life Ins. Co. of N. Am.*, No. 08-CV-00752, 2009 WL 1328636, at *7 (D. Colo. May 12, 2009) ("But directing some part of the enterprise's affairs is not the same as having some part in directing the enterprise's affairs.").

Plaintiffs' allegations fail for a second reason: the alleged "enterprise" is much larger than ACORD alone, and includes ACORD "members, strategic partners, associates, or non-member associates, and . . . stakeholders," as well as ACORD itself. TAC ¶ 151. As discussed above, Plaintiffs have not alleged that all the Defendants are ACORD members, and in fact, some are not. TAC ¶ 151; Doc. 458 at 4 n.3. Plaintiffs make no allegations at all (other than those that are utterly conclusory, *see, e.g.*, TAC ¶ 1089) that Defendants participated in the "operation or management" of this larger enterprise, nor do they explain what participation in the "operation or management" of such a large and diverse collection of corporate entities would look like. Accordingly, Plaintiffs' § 1962(c) allegations fail.

### iv.   1962(d)

18 U.S.C. § 1962(d) makes it unlawful to "conspire to violate any of the provisions of subsection (a), (b), or (c)" of § 1962. Because Plaintiffs have failed to state a claim under

sections 1962(a), (b), and (c), their 1962(d) conspiracy claim also fails.  *See BancOklahoma*, 194

F.3d at 1103; *Tal*, 453 F.3d at 1270.

### III.   Claims 6 & 7 – Sherman Act and Colorado Antitrust Act

Plaintiffs' antitrust claims allege that Defendants conspired to "raise, fix, and stabilize an

amount of underinsurance," to "use purposefully incorrect measures of replacement cost," and to

facilitate the "nondisclosure of material terms and information" in the property insurance market,

all in violation of the Sherman Act.  *See* TAC ¶¶ 1164-1175.  Plaintiffs' Sherman Act claim also

incorporates by reference the entire balance of their TAC.  TAC ¶ 1164.

In support of their motion to dismiss, Defendants argue that Plaintiffs have failed to

allege any express agreement, because "[t]he 260-page Complaint does not allege a single

specific statement or action taken by any Defendant expressing, suggesting, or implying a

commitment to engage in joint conduct, and fails to make a single substantive allegation against

any of the non-selling Defendants whatsoever."  Doc. 390 at 16.  Second, Defendants argue that

Plaintiffs have failed to allege parallel conduct "in a context that raises a suggestion of a

preceding agreement,"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007), because "the only

specific factual conduct alleged against any insurer in Plaintiffs' Complaint relates to the

particularized claims by the individual Plaintiffs against the ten selling Defendants," Doc. 390 at

18.

In response, Plaintiffs have filed an 115-page brief that is overly long and difficult to

follow.  *See* Doc. 445-2.  However, in response to Defendants' arguments, Plaintiffs state that

they have alleged "Defendants participated in ACORD by agreement," and that express

agreement is not necessary when the concerted action in question inherently leads to an

unreasonable restraint of trade.  Doc. 425-2 at 55.  In response to Defendant's argument

regarding parallel conduct, Plaintiffs assert that their claims are "predicated on [Defendants']

adoption and involvement in the concerted arrangement to apply anticompetitive standards to the

insurance industry," and that the selling Defendants have used those "standards."  Doc. 445-2 at

61.

A plaintiff asserting a claim under § 1 of the Sherman Act must allege "(1) concerted

action in the form of a contract, combination, or conspiracy, and (2) an unreasonable restraint of

trade" in a relevant market.  *Systemcare, Inc. v. Wang Labs. Corp.*, 117 F.3d 1137, 1139 (10th

Cir. 1997).  With respect to the existence of concerted action, "'[t]he crucial question' is whether

the challenged anticompetitive conduct 'stem[s] from independent decision or from an

agreement.'"  *Twombly*, 550 U.S. at 553 (citation omitted); *see Systemcare*, 117 F.3d at 1140

(explaining that § 1 "does not proscribe purely unilateral activity by a single entity").

Accordingly, Plaintiffs must allege either an express agreement or parallel conduct "in a context

that raises a suggestion of a preceding agreement."  *Twombly*, 550 U.S. at 557; *see Arapahoe*

*Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 80 F. Supp. 3d 1257, 1263 (D. Colo. 2015).

I find that Plaintiffs have failed to plead a Sherman Act violation.  Plaintiffs first argue

that they have alleged an antitrust agreement because they have alleged that Defendants

"participated in ACORD by agreement."  Doc. 445-2 at 55; TAC ¶ 154.  But the agreement that

Plaintiffs must allege is one "designed unreasonably to restrain trade."  *Abraham v.*

*Intermountain Health Care Inc.*, 461 F.3d 1249, 1257 (10th Cir. 2006).  The fact that certain

unspecified defendants became ACORD members by way of express agreements does not carry

this burden.  *See Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp.*, 801 F. Supp. 2d

1163, 1197 (D.N.M. 2011) ("Merely participating in a standard-setting organization does not

amount to an unlawful conspiracy in restraint.").

Neither have Plaintiffs placed their allegations in a "context that raises a suggestion of a preceding agreement." *Twombly*, 550 U.S. at 557. The parallel conduct alleged by the Plaintiffs is Defendants' adoption of certain definitions of "Actual Cash Value," methods for depreciating property, underinsurance, and the interaction between replacement value and actual cash value in Plaintiffs' insurance policies. *See* Doc. 445-2 at 26-30. But Plaintiffs do not directly allege that ACORD itself does anything to create, develop, or implement these particular definitions or standards. *See* TAC ¶¶ 150-209. In fact, Plaintiffs do not appear to dispute that the standards developed by ACORD itself concern "electronic data interchange between insurers, reinsurers, and insurance agents and brokers," which is not the subject of Plaintiff's claims. Doc. 391 at 2. At best, Plaintiffs have alleged that ACORD provided some sort of forum through which Defendants reached agreement regarding the challenged practices. But these allegations are insufficient to create antitrust liability. In the first place, Plaintiffs have not alleged that all Defendants are members of ACORD or that they in any way participated in ACORD's activities, but only that the Defendants are "members, strategic partners, associates, or non-member associates [of ACORD], and are stakeholders in the enterprise." TAC ¶ 151. Even if Plaintiffs had alleged that each Defendant was a member of ACORD, "mere opportunity to conspire" is not enough to plead antitrust liability. *See Abraham*, 461 F.3d at 1262. Finally, because Plaintiffs' Sherman Act claim fails, their Colorado Antitrust Act claim must likewise be dismissed. *See Four Corners Nephrology Assocs., P.C. v. Mercy Med. Ctr. of Durango*, 582 F.3d 1216, 1219 n.1 (10th Cir. 2009); *JTS Choice Enters., Inc. v. E.I. DuPont De Nemours & Co.*, No. 11–cv–03143, 2014 WL 793525, at *4 n.3 (D. Colo. Feb. 26, 2014).

### IV.     Claim 8 – Colorado Consumer Protection Act & Colorado Unfair Claims Deceptive Practices Act[4]

---

[4] Given that I have dismissed the federal claims in this case, I considered whether to decline to exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(c). *See* 28 U.S.C.

Plaintiffs' Eighth claim is for violation of the Colorado Consumer Protection Act, C.R.S.

§ 6-1-101 *et seq.*, "directly and through violation of the Colorado Unfair Claims Deceptive

Practices Act, § 10-3-1101 *et seq.*, C.R.S." TAC ¶ 1184. However, "[w]here the alleged

deceptive trade practice sounds in fraud, allegations as to fraudulent statements must be pled

with particularity, as required by Fed.R.Civ.P. 9(b)." *Martinez v. Nash Finch Co.*, 886 F. Supp.

2d 1212, 1216 (D. Colo. 2012); *see Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, No. 12-CV-

00463, 2013 WL 212640, at *6 (D. Colo. Jan. 18, 2013). For the reasons given above in

connection with Plaintiffs' RICO claims, *see supra*, Plaintiffs have failed to satisfy this

requirement, and accordingly Plaintiffs' CCPA claim is dismissed.

## V.      Claim 9 – Permanent Injunction

Plaintiffs' Ninth Claim seeks a permanent injunction against Defendants' allegedly

"improper and unlawful policies, practices, and procedures," TAC ¶ 1206, as authorized by

RICO, the Sherman Act, COCCA, the Colorado Antitrust Act, and the Colorado Consumer

Protection Act. *See* TAC ¶¶ 1201-05. Because, as discussed above, the claims on which

Plaintiff's request for a permanent injunction are dismissed, Plaintiffs' request for a permanent

injunction is denied.

## VI.     Claim 10 – Conspiracy

To state a conspiracy claim, a "plaintiff must allege the existence of '(1) two or more

persons, (2) an object to be accomplished, (3) an agreement on the object or course of action, and

---

1367(c) (providing that a district court may decline to exercise supplemental jurisdiction where the court "has dismissed all claims over which it has original jurisdiction"). However, because Plaintiffs have brought a class action under the Class Action Fairness Act ("CAFA"), *see* TAC ¶ 141, the weight of authority seems to indicate that I retain jurisdiction over the entire action, notwithstanding the dismissal of the federal claims or even withdrawal of the class allegations. *See* 28 U.S.C. § 1332(d)(2); *Louisiana v. AAA Ins.*, No. CIV.A. 07-5528, 2011 WL 5118859, at *10 (E.D. La. Oct. 28, 2011) (finding the supplemental jurisdiction statute inapplicable because CAFA jurisdiction applies "to the 'civil action' as a whole—not just to individual claims within that action").

(4) one or more overt acts and (5) damages as a proximate result thereof.'" *Houston v. Mile High Adventist Acad.*, 846 F. Supp. 1449, 1457 (D. Colo. 1994) (quoting *Schneider v. Midtown Motor Co.*, 854 P.2d 1322, 1326 (Colo. App. 1992)).  "[C]onclusory allegations" are insufficient to allege an agreement in furtherance of a conspiracy.  *Id.* at 1458.  Rather, "[t]o state a claim for civil conspiracy, Plaintiff 'must allege *specific facts* showing agreement and concerted action among the defendants.'"  *McDaniel v. Denver Lending Grp., Inc.*, No. 08–cv–02617, 2009 WL 1873581, at *12 (D. Colo. June 30, 2009) (emphasis in original; citation omitted).  For the reasons discussed in connection with Plaintiffs' antitrust claims, see *supra*, I find that Plaintiffs have failed to allege either an agreement or parallel conduct in a context that suggests an agreement.  Accordingly, Plaintiffs' civil conspiracy claim is dismissed.  *See Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995) ("The court will not infer the agreement necessary to form a conspiracy; evidence of such an agreement must be presented by the plaintiff."); *Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir. 2004) (similar).

## VII.   Claim 11 – Fraud

Under Rule 9(b), Plaintiffs' claims of fraud must be pled with particularity.  *See United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006).  For the reasons given above in connection with Plaintiffs' RICO claims, *supra*, Plaintiffs have failed to plead the circumstances of the alleged fraud with the particularity required by Rule 9(b), and accordingly their fraud claim is dismissed.

## VIII.   Claim 12 – Constructive Fraud

To establish a claim for constructive fraud, a plaintiff must show (1) the existence of a duty due to a relationship between the parties; (2) violation of the duty by making deceptive material representations of past or existing facts or remaining silent when a duty to speak exists;

(3) reliance thereon by the complaining party; (4) injury to the complaining party proximately caused thereby; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party.  *Barnett v. Elite Properties of Am., Inc.*, 252 P.3d 14, 24 (Colo. App. 2010).  Plaintiffs have not alleged any duty arising from a special relationship between the parties, *see* TAC ¶¶ 1230-38, and the relationship between insurer and insured does not create any such duty.  *See Kaercher v. Sater*, 155 P.3d 437, 441 (Colo. App. 2006) ("Colorado follows the general rule that insurance agents have a duty to act with reasonable care toward their insureds, but, absent a special relationship between the insured and the insurer's agent, that agent has no affirmative duty to advise or warn his or her customer of provisions contained in an insurance policy."); *Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1171 (10th Cir. 2008); *Estate of Hill v. Allstate Ins. Co.*, 354 F. Supp. 2d 1192, 1197 (D. Colo. 2004).  Accordingly Plaintiffs' constructive fraud claim is dismissed.

## IX.    Claim 13 – Negligent Misrepresentation

Plaintiffs base their negligent misrepresentation claim on "the representations of Defendants, alleged in the body of the Complaint, *supra*, as to the nature of their insurance product, and among other things, the nature of Actual Cash Value as the Defendants intended to use and/or apply the term, were known to Defendants to have a great likelihood of not being understood by the public."  TAC ¶ 1240.  In order to state a claim for negligent misrepresentation, Plaintiffs must allege that Defendants made a misrepresentation of a past or present material fact at the time of contracting, and that Plaintiffs entered into the contract in reliance on that misrepresentation.  *See Mehaffy, Rider, Windholz & Wilson v. Cent. Bank Denver, N.A.*, 892 P.2d 230, 237 (Colo. 1995) ("In a claim for negligent misrepresentation, the misrepresentation must be of a material fact that presently exists or has existed in the past."); *id*.

at 238 ("Reliance is a necessary element of a claim for negligent misrepresentation."); *Myers v. All. for Affordable Servs.*, 371 F. App'x 950, 958 (10th Cir. 2010) (unpublished).

But Plaintiffs have not alleged that Defendants made any misrepresentations of past or present facts at the time of contracting, or that they relied on any such representations in entering into their respective policy contracts. *See* ¶¶ TAC 629-630 (Snyders); ¶ 658, 660 (Geldreich); ¶¶ 687-89 (Harrow); ¶ 727 (Yoder and Taylor); ¶¶ 736, 738-41 (Lemerts); ¶¶ 759, 763-64 (Rays); ¶¶ 785, 787-88 (Creager); ¶¶ 811, 819 (Koch); ¶¶ 827, 829-32 (Siemplenski); ¶¶ 852, 854-57 (Meyer/Wright-Meyer); ¶¶ 879, 889, 898 (Hoffman/Urban/Hammer). Accordingly, Plaintiffs' negligent misrepresentation claim is dismissed.

## X.     Claims 14 & 15 – Breach of Contract

Plaintiffs' Fourteenth and Fifteenth claims are for "Breach of Contract - Ambiguity Created by Multiple Standard Processes: the Meeting of the Minds at the Time of Application, Creating an Agreement" and "Breach of Contract - Contract of Adhesion / Reasonable Expectations." TAC pp. 243, 248. Plaintiffs allege both that "an agreement and meeting of the minds was reached in the application process," TAC ¶ 1256, and that Defendants "breached their obligations under the polic[ies]" themselves, TAC ¶ 1274. Plaintiffs also allege that "[a]ll other conditions, terms or exclusions, not communicated at the time of application, are also latently ambiguous, given the totality of the circumstances, and should have no effect, as they are terms of adhesion." TAC ¶ 1284.

I will dismiss Plaintiffs' breach of contract claims. In the first place, Plaintiffs claims for breach of the insurance policies themselves fail because Plaintiffs have not identified any actual provisions of the policies or explained how Defendants breached them. *See* TAC ¶ 1274; *Pernick v. Computershare Trust Co., Inc.*, No. 13-CV-02975, 2015 WL 5728880, at *12 (D.

Colo. Sept. 29, 2015); *Conagra Trade Grp., Inc. v. Fuel Expl., LLC*, 636 F. Supp. 2d 1166, 1172

(D. Colo. 2009). In fact, the gist of Plaintiffs' breach of contract claims appears to be that the

policies themselves contained terms inconsistent with what Plaintiffs thought they had agreed to

in the application and sale process. *See, e.g.*, TAC ¶¶ 1256, 1258-59.

In addition, Plaintiffs are wrong that the application process yielded any binding contract.

Colorado law is clear that an insurance contract is not formed until "the receipt of the completed

application, completion of the underwriting process, acceptance by the insurer, and issuance of a

binder and policy." *Griffin v. State Farm Fire & Cas. Co.*, 104 P.3d 283, 286 (Colo. App. 2005);

*see Racz v. SBLI USA Mut. Life Ins. Co.*, No. 11–cv–02398, 2012 WL 5989484, at *5 (D. Colo.

Nov. 29, 2012). Because Plaintiffs have not identified any terms of a valid contract that were

purportedly breached, their breach of contract claims are dismissed.

## XI.   <u>Claim 16 – Bad Faith Breach of Insurance Contract</u>

In order to establish bad faith breach of an insurance contract, a plaintiff  "must prove

that (1) the insurer acted unreasonably under the circumstances, and (2) the insurer either

knowingly or recklessly disregarded the validity of the insured's claim." *Sanderson v. Am.

Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010). If a reasonable person would find

that the insurer's justification for denying or delaying payment of a claim was "fairly debatable"

(i.e., if reasonable minds could disagree as to the coverage-determining facts or law), then this

weighs against a finding that the insurer acted unreasonably. *Id*.

As discussed in connection with Plaintiffs' breach of contract claims, Plaintiffs have not

alleged that any provision of their insurance contracts with the Defendants was breached. *See

supra*. In fact, the gravamen of Plaintiffs' claims is that they were deliberately underinsured and

misled regarding how the amounts they would be paid under their policies were to be calculated,

*see* Doc. 445-2 at 26-30, and not that Defendants failed to comply with the terms of the contracts themselves.  At best, Plaintiffs have alleged that various terms in their insurance contracts, including "Actual Cash Value," were ambiguous, and that those terms were interpreted and applied contrary to Plaintiffs' expectations.  *See, e.g.* TAC ¶¶ 391, 392, 396, 397.  But Plaintiffs have not established that their claims were "valid," that Defendants' justification for denying payment on their claims was not "fairly debatable," or indeed, even that such denial was contrary to the express terms of the contracts.  Accordingly, Plaintiffs' bad faith breach of insurance claim is dismissed.

### XII.   Willful/Wanton Breach of Contract (C.R.S. § 13-21-102.5(6)(a))[5]

To state a claim for willful and wanton breach of contract, Plaintiffs must allege that Defendants acted with: (1) intent to breach the contract; (2) without any reasonable justification for breach; and (3) that the contract clearly states that damages for noneconomic loss were within the contemplation or expectation of the parties.  C.R.S. § 13-21-102.5(6)(a)(II).  Because Plaintiffs have not alleged any underlying breach of contract, *see supra*, and because Plaintiffs have not alleged that the contract "clearly states" that damages for noneconomic loss were within the contemplation of the parties, this claim is dismissed.  *See* TAC ¶ 1306.

### XIII.   Claim 18 – Interference with Performance of a Contract

To state a claim for interference with a contract, a plaintiff must allege that the defendant interfered with the performance of a contract between the plaintiff *and a third party*.  *See Daniluk v. Norfolk S. Ry. Co.*, No. 13-CV-01304, 2015 WL 3457839, at *2 (D. Colo. May 29, 2015) ("[A] party cannot interfere with its own contract."); *MDM Grp. Associates, Inc. v. CX*

---

[5] Plaintiffs's response does not address Defendant's arguments that claims 17 through 23 should be dismissed.  Doc. 458 at 27-28.  Nevertheless, I have an independent duty to address the merits of those claims.  *See Issa v. Comp USA*, 354 F.3d 1174, 1177–78 (10th Cir.2003); *Sawyer v. USAA Ins. Co.*, 912 F. Supp. 2d 1118, 1134 (D.N.M. 2012).

*Reinsurance Co.*, 165 P.3d 882, 886 (Colo. App. 2007).  Plaintiffs allege, however, that

Defendants interfered with their own contracts with Plaintiffs.  *See, e.g.*, TAC ¶ 1312.

Accordingly, this claim is dismissed.

### XIV.   Claim 19 – Negligent Hiring

A claim for negligent hiring and retention requires a showing that Defendants hired

employees under circumstances such that, at the time of hiring, Defendants knew or had reason

to believe that hiring the employee in question would create an undue risk of harm to others in

that employee's carrying out his or her employment responsibilities.  *Van Osdol v. Vogt*, 908

P.2d 1122, 1132 n.17 (Colo. 1996).  However, Plaintiffs have not alleged any specific facts

whatsoever regarding the hiring of any of Defendants' employees.  *See* TAC ¶ 1316-22.

Accordingly, Plaintiffs' negligent hiring claim is dismissed.

### XV.   Claim 20 – Outrageous Conduct

To establish a claim for outrageous conduct, Plaintiffs must show that: "1) the defendant

engaged in extreme and outrageous conduct; 2) the defendant engaged in such conduct recklessly

or with the intent of causing the plaintiff severe emotional distress; and 3) defendant's conduct

caused plaintiff to suffer severe emotional distress."  *McCarty v. Kaiser-Hill Co., L.L.C.*, 15 P.3d

1122, 1126 (Colo. App. 2000).  "The level of outrageousness required for conduct to create

liability for intentional infliction of emotional distress is extremely high."  *Id.*  "Liability has

been found only where the conduct has been so outrageous in character and so extreme in degree

as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community."  *Id.*

Plaintiffs' outrageous conduct allegations merely incorporate by reference the entirety of

their 260-page TAC, and then allege that "[t]he above-described actions of the Defendants were

extreme and outrageous." TAC ¶ 1324.  These vague and conclusory allegations fail to state a

claim for outrageous conduct.  *See Schultz v. Allstate Insurance Co.*, 764 F. Supp. 1404, 1411

(D. Colo. 1991); *Wilson v. State Farm Mut. Auto. Ins. Co.*, 934 F.2d 261, 265-66 (10th Cir.

1991).  Plaintiffs' outrageous conduct claim is dismissed.

### XVI.   Claim 21 – Unreasonable Denial Under UCDPA

An insurer's delay or denial is unreasonable "if the insurer delayed or denied authorizing

payment of a covered benefit without a reasonable basis for that action."  C.R.S. § 10–3–

1115(2).  Similarly, to support a common law bad faith claim, a claimant must show that an

"insurer's conduct is unreasonable and the insurer knows that the conduct is unreasonable or

recklessly disregards the fact that the conduct is unreasonable." *Travelers Ins. Co. v. Savio*, 706

P.2d 1258, 1275 (Colo. 1985).

The Plaintiffs have not alleged that they were denied any "covered benefit."  Rather, the

gravamen of their claims is that their policy limits caused them to be underinsured, and that they

were misled by omission regarding how policy terms such as replacement cost and actual cash

value would be calculated and applied.  *See, e.g.* TAC ¶¶ 632, 646, 653, 672 , 710, 729, 750,

756-57, 780, 808, 822-23, 837.  Because Plaintiffs have failed to allege that they were denied

any covered benefit, let alone that there was no reasonable basis for such denial, their

unreasonable denial claim fails.  *See Wagner v. Am. Family Mut. Ins. Co.*, 569 F. App'x 574, 580

(10th Cir. 2014) (rejecting unreasonable denial claim "based upon exclusions in the policy which

were fairly applied").

### XVII.  Claim 22 – Negligence

Because Plaintiffs have also brought a claim for bad faith, their additional claim for

negligence is duplicative and is therefore dismissed.  *See Farmers Grp., Inc. v. Trimble*, 691 P.2d

1138, 1143 (Colo. 1984); *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 528 (Colo. App. 2008).

## XVIII. <u>Claim 23 – Quantum Meruit and Unjust Enrichment</u>

Because there is an express, valid contract between the parties governing the subject matter of Plaintiffs' claims, and because Plaintiffs do not allege that that contract is unenforceable or that their claims relate to any extra-contractual obligations, Plaintiffs' unjust enrichment and quantum meruit claims are dismissed. *See Hoiles v. Alioto*, 461 F.3d 1224, 1238 (10th. Cir. 2006) ("Recovery in quantum meruit is permitted only in the absence of a valid, express contract."); *McCurdy Grp. v. Am. Biomedical Grp., Inc.*, 9 F. App'x 822, 827 (10th Cir. 2001) (unpublished) (quantum meruit claim permitted where only where claim "involved obligations outside the scope of the express contract"); *Abraham v. WPX Energy Prod., LLC*, 20 F. Supp. 3d 1244, 1286-87 (D.N.M. 2014).

## <u>Conclusion</u>

For the reasons given above, Defendants' Motion to Dismiss (Doc. 390) is **GRANTED**. In light of the dismissal of all of the Plaintiffs' claims, the other pending motions in this action (Docs. 389, 391-92, 394-98, 400, 402, 406, 408, 410-13) are **DENIED AS MOOT**.


Dated:  January 15, 2016                          *s/ John L. Kane*
                                                                  Senior U.S. District Judge