**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

CIVIL ACTION NO.: 1:14-cv-01736-JLK

DALE SNYDER, et al., individually, and on behalf of all others similarly situated,

   Plaintiffs,

v.

ACORD CORPORATION, a Delaware non-profit corporation, et al.

   Defendants.

---

**MOTION FOR RELIEF FROM FINAL JUDGMENT (DOCS. 478 & 479), PURSUANT TO FED.R.CIV.P. 60(b)(2), 60(b)(3) AND 60(b)(1), AND TO ALTER OR AMEND PURSUANT TO FED.R.CIV.P. 59(e)**

---

  The named Plaintiffs move the Court for relief from the FINAL JUDGMENT, Doc. 479, (hereafter "JUDGMENT") and its MEMORANDUM OPINION, Doc. 478, (hereafter "OPINION") pursuant to Fed.R.Civ.P. 60(b)(2), 60(b)(3), 60(b)(1) and Fed.R.Civ.P. 59(e), requesting that it vacate all portions contrary to precedent and that it permit the filing of an amended complaint. Plaintiffs also request an evidentiary hearing so that they may have meaningful opportunity to treat the evidentiary issues raised herein—particularly if it becomes apparent that Plaintiffs will be deprived of property as a result of the JUDGMENT, such as through motions for attorney fees seeking §13-17-201, C.R.S. awards.

  **D.C.COLO.LCIVR 7.1 CERTIFICATION**: On February 12 and 15 of 2016, counsel conferred as to Doc. 481. On March 3, 2016, the undersigned e-mailed liaison counsel about re-filing and also received communications from Stuart Douglas Morse, Esq. and Erin Frances Frohardt, Esq. The undersigned mentioned the re-filing, and the two attorneys mentioned §13-17-201, C.R.S. motions. On March 9, 2016, Defendants responded that they opposed the substantive relief.

  **1.** *Rule 60(b)(2) and Claims 6 & 7 - Sherman Act and Colorado Antitrust Act (Opinion, at 19-21).* On October 10, 2015, Plaintiffs' counsel discovered evidence—now on the record—which was reviewed by the Court prior to granting leave to re-file. S*ee* Docs. 493-1, 493, at 3-4, and 494; Local Rule 15.1(b). The evidence is a posting by ACORD'S CEO

concerning ACORD'S "carrot and stick" best practice, demonstrating that the standards program is an illegal boycott, where "compulsion," a synonym for "coercion," is used to implement the standards program and "shut down" those who do not adopt it. *See* Doc. 493-1, Doc. 380, at ¶ 453, and at ¶¶ 177, 183(14), 183(24), 184, 225, 227, 261(e), 309(8)-(9), 320, 330, 350, 381, 391, 396, 437-481, 459, 489, 503, 524-574, 956-961, 1052; *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 789-90 and 801 (1993). The correct presumption for an open membership trade group that uses coercion is not that it is *simply* a trade group, but that it is a conditional boycott. *Id.* at 785-86. As coercion is used to implement the adoption of standards, the threat of consumer harm is clear, *i.e.*, plausible. *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 US 492, 501, n. 5 (1988). The existence of a boycott suggests conspiracy liability on the part of all participants—even those who acquiesced to intimidation. *United States v. Parke, Davis & Co.*, 362 U.S. 29, 43 (1960). The plausibility of harm to the Plaintiffs can be factually verified by simply examining the standard forms and processes of the program, *i.e.*, the scheme—both those used before and after a claim—to determine if the system inherently keeps material information from homeowners. Additionally, the *per se* wrong itself suggests the presumption of harm to the Plaintiffs, which is all that is required in a plausibility analysis.[1]

---

[1] Identifying a wrong and a harm that, by inference, stems from the wrong is all that is required. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Radovich v. Nat'l Football League*, 352 U S. 445, 453-54 (1957); *Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.*, 364 US 656, 660 (1961); *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1966, n. 5 (2007). The OPINION also erred by limiting its analysis to only two forms of antitrust violation and by demanding more than an inference of agreement or wrongdoing, as is sufficient per *Twombly, supra*. *See also United States v. Nat'l Retail Lumber Dealers Ass'n*, 40 F. Supp. 448, 455 (D. Colo. 1941); *Systemcare, Inc. v. Wang Labs. Corp.*, 117 F.3d 1137, 1140 (10th Cir. 1997); footnote 8, *infra*. In this, both the law and the procedural rules must be construed to ensure that the goals Congress intended are achieved. *Fred Meyer, Inc., supra*, 390 U.S. 341, 349 (1968); *Ute Indian Tribe of Uintah & Ouray Reservation v. Probst*, 428 F.2d 491, 497 (10th Cir. 1970); *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 387(1978). Evidence that there is a *per se* restraint leaves the factfinder to "presume" intent and, thus, to infer that liability and impact merge. *See Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1525 (10th Cir.1984); *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1478 (10th Cir. 1985); *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946)). This more direct route of establishing wrongdoing will lead to a shorter complaint, as fewer facts are needed to infer illegality. More concise RICO allegations will also result, as RICO was written to address organized crime cartels (an antitrust boycott would presumably qualify as an enterprise). *See Boyle v. U.S.*, 556 U.S. 938, 938-39, and at 955 (2009) ("a jury can infer [the required] existence and continuity from the evidence used to establish the pattern of racketeering activity . . . when the pattern of activity is so complex that it could not be performed in the absence of structures or processes for planning or concealing the illegal conduct beyond those inherent in performing the predicate acts."); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 494 (1985); http://www.merriam-webster.com/dictionary/scheme ("a plan or program of action; *especially*: a crafty or secret one"). A systematic business practice suggests intentionality. *See* C.R.S. § 10-3-1104(1)(h); *Morton v. Dow*, 525 F.2d 1302, 1306-07 (10th Cir.1975). A

**2. *Rule 60(b)(3) Relief Should be Granted, as the Court was Misled.*** Defendants ACORD and MCKINSEY misled the Court by stating that ACORD "best practices" are limited to data transmission: as opposed to claims handling, underwriting, advertising and shared business practices. OPINION, Doc. 478, at 17-18, 21; Doc. 391, at 2 and 4; *See, e.g.,* Doc. 380, at ¶¶ 181, 182, 183(25), 244, 291, 295, 320-21, 330, 407, 429, 487-497, 559 (features of one business model). The undersigned certifies, as per Rule 11, that Plaintiffs possess ACORD documents showing the statements to be false. The documents, determined to be too voluminous in a motion, can be offered at the requested evidentiary hearing. *See* Doc. 494.

**3. *Rule 60(b)(1), the Opinion was Mistaken as to the Law and the Facts.*** The OPINION did not follow—but instead contradicted—numerous rules governing 12(b)(6), dismissal, and the construction of pleadings.[2]

---

standards program with the anticompetitive features identified, depriving people of honest services, while using the mail and wires, would meet these criteria. This factual background also affects the reasonableness of the dealings between the insurers and the Plaintiffs, affecting the state claims.

[2] The list is numerous. A court must studiously examine the facts alleged *within the four corners of a complaint* to see if *any* of them can support *any* claim in law or equity, even on a theory that has not been stated. *Morse v. Regents of the Univ. of Colo*, 154 F.3d 1124, 1127 (10th Cir. 1998); *Barrett v. Tallon*, 30 F.3d 1296, 1299 (10th Cir. 1994); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Lehman v. City of Louisville*, 967 F.2d 1474, 1476 (10th Cir. 1992); *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir.1991). A court also must not limit its analysis to the legal theories claimed, nor penalize imperfectly stated theories of law. *Johnson v. City of Shelby*, 135 S.Ct. 346, 346-47 (2014); *Morton v. Dow*, 525 F.2d 1302, 1306–07 (10th Cir.1975); *New Home Appliance Ctr., Inc. v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957). "*Twombly* and *Iqbal* do not require a complaint to include all facts necessary to carry the plaintiff's burden." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citation omitted). "[T]he 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint." *Id.* An inference of wrongdoing is all that is needed. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007). Additionally, dismissal should not be with prejudice when there is *any likelihood* that a complaint can be amended. *Lacey v. Homeowners of Am. Ins. Co.*, 546 F. App'x 755, 758 (10th Cir. 2013); *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 (10th Cir 2001). In this, there must be no doubt, as a case must be completely frivolous to disallow amendment, and leave to amend must be liberal. *Radovich v. Nat'l Football League*, 352 U.S. 445, 453-54 (1957); *Calderon v. Kan. Dep't of Soc. and Rehab. Services*, 181 F.3d 1180, 1185–86 (10th Cir.1999). The OPINION also contradicts precedent governing 12(b)(6), in dismissing a complaint where more particularity or clarity could be provided through a more definite statement. *New Home Appliance Ctr., Inc. v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957). As evident on the record, Doc. 493-1, it is far from *patently obvious* that Plaintiffs' allegations are frivolous or "conclusory." In this, the OPINION's criteria for determining what is "conclusory" led to an absurd result. *See* OPINION, at 23 (contrasting "specific" allegations and "conclusory" allegations); footnote 1, *supra*. These rules also apply to Rule 8, where the OPINION also errs in dismissing with prejudice. *See* Doc. 445, at 8, Doc. 493, at 15. *Daniels v. Thomas*, 225 F.2d 795, 797-98 (10th Cir. 1955); Fed.R.Civ.P. 8(a)(2) and (3). Dismissal with prejudice should only be an extreme "last resort," given the constitutional right to access the courts. *Davis v. Miller*, 571 F. 3d 1058, 1061 (10th Cir. 2009). Additionally, the OPINION uses §1983-specific justifications to dismiss claims that do not have the same considerations, such as antitrust claims and claims where there is joint responsibility for joint action. OPINION, at 5 (citing *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007)); *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1254 (10th Cir.1997); *Radovich v. Nat'l Football League*, 352 U.S. 445, 453-54 (1957). Based on these rules, the OPINION was also mistaken on the facts

**3(A)** *Claims 1, 5, 8, 11, 12 & 13 (Opinion, at 7, 16-18, 21-25).* The most significant example of the OPINION contradicting these rules is with regard to mail and wire fraud *by omission*, which it dismissed despite facts suggesting the Selling Defendants possess superior knowledge to Plaintiffs. *See* OPINION, Doc. 478, at 10-11 ("[A] duty to disclose arises only when a confidential relationship exists between the parties, i.e., a fiduciary relationship, **or *when one party has superior information not reasonably available to the other.*"**) (citation omitted and emphasis added). The simple fact, that an insurer and an insured are involved, raises this inference. *Bailey v. Lincoln Gen. Ins. Co.*, 255 P3d 1039, 1049 (Colo. 2011). The Complaint, Doc. 380, also contains numerous, specific allegations suggesting that ACORD participants know more than both consumers and insureds: including the fact that material information was not made available to Plaintiffs prior to sale or prior to claim.[3] In Colorado law, this is enough to allege a knowledge disparity and a duty. *See Ackmann v. Merch. Mortgage & Trust Corp.*, 645 P.2d 7, 13 (Colo.1982). Under these facts, a knowledge disparity is not just plausible, but it is unbelievable to find otherwise. Contrary to the OPINION, Plaintiffs have alleged facts suggesting that some of the Defendants owe a fiduciary duty. *See* Doc. 380, at ¶ 293(b), n. 5, ¶ 977(6), ¶¶ 114-115, 604, 626, 658, 737, 759, 852, 280; Black's Law Dictionary (10th ed. 2014), INSURANCE COMPANY, **mutual insurance company** (1836); *Consol. Rock Products Co. v. Du Bois*, 312 U.S. 510, 522 (1941). This is bolstered by Plaintiffs alleging a quasi-fiduciary duty. Doc. 380, at ¶

---

because: (1) it was misinformed, as addressed above in § 2; (2) it determined that allegations were conclusory, despite many allegations being set forth as admissions of Defendant ACORD (*See also* Doc. 391, at 9); and (3) it did not read the allegations in the light most favorable to Plaintiffs, a practice that would presumably involve reading allegations as being factual whenever possible. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[3] *See, e.g.,* Doc. 380, ¶ 673 (the industry standard of depreciation uses an obscure source); ¶ 1096; ¶¶ 355-359 (the actuarial practice of including underinsurance in the modeling of insurance); ¶¶ 986(c), at 184, 1185(n), note 13, at 232, 1036(3), at 196, 470-473, 463, 458, 312-314, 439, 426, 173 ("ACORD's standards framework is comprehensive and complex, with a challenging initial learning curve"); ¶¶ 174, 176, 196, 199, 201, 204, 211 ("According to ACORD, ACORD "best practices" are based on the direct experience of ACORD members who have learned the 'best ways' to implement ACORD standards to improve their businesses"); ¶¶ 1077, 1084, and 174, 205, 221, 301, 302, 307-09, 309, n. 6, 309, n. 7, 317. As to material terms. *See* ¶¶ 918, 952, 953, 321, 350, 387-400, 401-481, 482-512, 517, 555, 574, 579, 1036, 1061. ACORD standards for depreciation even differ from the legally mandated approaches for determining value and depreciation. *Cf.* Doc. 380, at 184, 227, 232, 232, n. 13, and ¶¶ 391-400, 480, 672, 677-678, 944, 946, 1252, 423, 691; § 12-61-710(1)(g), C.R.S. *See also* Doc. 380, ¶¶ 311-314, 353-359. The Complaint also chronicles the examples of this pattern with the named Plaintiffs. *See* Doc. 445-12; Doc. 380, at 125-179.

1185(a)(v), ¶ 226, ¶¶ 1196-97, and ¶ 1335(1); *see, e.g., Seabron v. Am. Family Mut. Ins. Co.*, 862 F. Supp. 2d 1149, 1156 (D. Colo. 2012). At the very least, these duties are violated when an insurer continues to allow reliance by not rectifying a deception once the duty arises. Doc. 380, at ¶¶ 1061, 1185-1188, 1289, 1291, 1198, 1335, 1337, 1339, and 1340. Furthermore, there are many other duties that arise by operation of law on the facts alleged: most of which stem from the inferences of deceit inherent in withholding material terms.[4] The facts referenced are clearly factual in nature, as they can be verified by simply comparing the standard forms used in the ACORD standards program prior to claim with those used thereafter. The allegations are not merely about any hypothetical defendant. *See Ridge at Red Hawk, LLC, v. Schneider*, 493

---

[4] "A representation that the maker knows to be capable of two interpretations, one of which he knows to be false and the other true is fraudulent if it is made: (a) with the intention that it be understood in the sense in which it is false, or (b) without any belief or expectation as to how it will be understood, or (c) with reckless indifference as to how it will be understood." *Tenneco Oil Co. v. Joiner*, 696 F.2d 768, 773 (10th Cir. 1982)(citing Restatement of Torts, 2d, § 527). *See also Neder v. United States*, 527 U.S. 1, 7 (1999) (deceit: "a natural tendency to influence, or [is] capable of influencing, the decision"). A duty is violated when "*deceitful* concealment of material facts may constitute actual fraud." *United States v. Gallant*, 537 F.3d 1202, 1228 (10th Cir.2008) (citation omitted); *see also United States v. Zar*, 790 F.3d 1036, 1050 (10th Cir.); *United States v. Chavis*, 461 F.3d 1201, 1207-08 (10th Cir. 2006). As stated in *Chronic*, "[i]f a scheme is devised with the intention of defrauding, and the mails are used in executing it, it makes no difference that there is not a misrepresentation of a single *existing fact*." *United States v. Cronic*, 900 F.2d 1511, 1514 (10th Cir. 1990) (emphasis added). The "intent to defraud under §§ 1341 and 1343 is akin to the intent to deceive in order to deprive one of property or honest services." *United States v. Welch*, 327 F.3d 1081, 1105 (10th Cir.2003) (citation omitted). "A scheme to defraud focuses on the intended end result and affirmative misrepresentations are not essential." *United States v. Gallant*, 537 F.3d 1202, 1228 (10th Cir.2008) (quoting *United States v. Cochran*, 109 F.3d 660, 664 (10th Cir.1997)) (emphasis added). For that reason, "[t]he criminal intent to do the act is established by the formation of the conspiracy [*i.e.*, scheme]." *Pinkerton v. United States*, 328 U.S. 640, 647 (1946); *see also* Doc. 493-1. "In recognizing that [1] a defendant's reckless indifference to the truth of a representation may establish the intent to defraud under § 1341, we noted: 'A variety of circumstantial evidence has been held relevant to infer fraudulent intent. Intent may be inferred from evidence that the defendant [2] attempted to conceal activity. Intent to defraud may be inferred from [3] the defendant's misrepresentations, [4] knowledge of a false statement as well as [5] the defendant profiting or [6] converting money to his own use.'" *United States v. Welch*, 327 F.3d 1081, 1105-06 (10th Cir.2003) (brackets added). The general rule as to states of mind is that they are inferred. *Am. Commc'ns Ass'n, C.I.O., v. Douds*, 339 U.S. 382, 411(1950). In this, ACORD participants support standards that are calculated to bring about the forfeiture of replacement cost: the entire point of a replacement cost policy. *See, e.g.*, COMPLAINT, Doc. 380, ¶¶ 255, 309, 333, 338-345, 355, 387, 401-403, 407, 410, 414-415, 467, 513-514, 516, 558, 590; *see also* ¶¶ 309(2), 402, 405-406, 479, 514, 977(2), 987(c), 1231. These facts suggest that participant insurers know that the property will not be replaceable as the insurance is underwritten—hence deception. *See, e.g.*, COMPLAINT, Doc. 380, at ¶¶ 311, 401, 407, 415, 513-515. As to an "actual cash value" policy, the analysis is almost identical on the issues of: (1) the standard forms that do not provide material information; and (2) the facts suggesting intent on the part of those participating in the ACORD standards program. The entire purpose of an "actual cash value" policy—like any policy—is to insure against calamity. *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1049-50 (Colo. 2011). In this, the "actual cash value" standard used does not conform to the legal requirements of the Uniform Standards of Professional Appraisal Practice ("USPAP"), which are law in Colorado pursuant to § 12-61-710(1)(g), C.R.S., and which require valuation of property and depreciation to be reconciled to market value. *Cf.* Doc. 380, at 184, 227, 232, n. 13, and ¶¶ 391-400, 480, 672, 677-678, 944, 946, 423, 691. *See also Kungys v. United States*, 485 U.S. 759, 770 (1988); footnote 7, *infra*. The result is calamity.

F3d 1174, 1177 (10th Cir. 2007); *Twombly*, 127 S. Ct. at 1965. Evidence of illegal combination in the form of boycott—consistent with the allegations—is presently before the Court. *See* Doc. 493-1. These are not one-size-fits-all allegations. Additionally, they are corroborated by the specific facts alleged as to the named Plaintiffs, where information remained concealed even after pertinent requests and numerous opportunities to disclose. Doc. 445-12, footnote, 3, *supra*. These predicate act allegations are capable of being grouped into a pattern, which raises inferences of a system and intent.[5] Duties to disclose also arise by operation statute on the facts alleged.[6] It should further be noted that intent is not an element of these duties, nor is reliance, as would be the case with ordinary fraud. *See F.T.C. v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202 (10th Cir. 2005). "Instead, the **'cardinal factor'** in determining whether an act or practice is deceptive.. is **the likely effect** the promoter's handiwork **will have on the mind of the ordinary consumer**." *Id.* (citations omitted and emphasis added). Furthermore, Colorado law concerning fraud via nondisclosure offers a plaintiff additional tools not mentioned in *BancOklahoma*.[7] In this, Plaintiffs incorporated their common law fraud and constructive fraud allegations into their RICO

---

[5] *See* C.R.S. § 10-3-1104(1)(h). The characteristics of the standard forms, and their consequences, are, by definition, systematic, as they relate to a system, *i.e.*, program. *See* http://www.merriam-webster.com/dictionary/systematic; C.R.S. § 6-1-105(2).

[6] *See F.T.C. v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1202 (10th Cir. 2005); *see also* 15 U.S.C.A. § 55. In Colorado, any materials provided by an insurer to the insured are considered an "advertisement." *See* C.R.S. § 10-3-1104(1)(a)(I), (l)(a)(V), (l)(a)(VI) and (l)(b)(I). In Colorado, FTC standards have been adopted in the insurance context. *See Showpiece Homes Corp. v. Assurance Co. of America*, 38 P.3d 47, 54 (Colo. 2001) (quoting *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 240 (1972)); *see also* FTC Policy Statement on Deception, October 14, 1983, Appended to *Cliffdale Associates, Inc.*, 103 F.T.C. 110, 174 (1984); C.R.S. § 6-1-105(u); *F.T.C. v. Colgate-Palmolive Co.*, 380 U.S. 374, 390 (1965).

[7] *See Kinsey v. Preeson*, 746 P.2d 542, 550 (Colo 1987). As to the elements of the related tort, fraudulent concealment, *see Morrison v. Goodspeed*, 100 Colo. 470, 477-78 (1937); *Ackmann v. Merch. Mortgage & Trust Corp.*, 645 P.2d 7, 13 (Colo.1982); *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1361 (Colo. 1993). Fraud may be inferred from circumstantial evidence. *See, e.g., Zimmerman v. Loose*, 425 P.2d 803 (1967); *Hinshaw v. Hinshaw*, 148 Colo. 262, 365 (1961). Direct evidence of reliance is not required, and the facts suggest reliance. *Goodspeed*, at 479; *Lutz Farms v. Asgrow Seed Co.*, 948 F.2d 638, 645 (10th Cir. 1991); *N. Texas Prod. Credit Ass'n v. McCurtain Cty. Nat. Bank*, 222 F.3d 800, 814 (10th Cir. 2000). **Nor is privity a requirement**. *Schnell v. Gustafson*, 638 P.2d 850, 852 (Colo.Ct.App.1981)(citing *Goodspeed*). As to material nondisclosure, the materiality itself serves instead of reliance, and it is sufficient that a defendant failed to disclose known material facts with the intent to influence the plaintiff's decision. *Ackmann*, at 13-15. These rules also pertain to negligent misrepresentation because, there too, the standard for omissions is different, as reliance is not a factor. *Ackman*, at 13. Similarly, a promise with a false intent, or with negligence or recklessness, as to performance, is a present misrepresentation. *See Mehaffy, Rider, Windholz & Wilson v. Cent. Bank Denver, N.A.*, 892 P.2d 230, 237 (Colo. 1995); *Ballow*, at 1362; *Brody v. Bock*, 897 P.2d 769, 776 (Colo. 1995). The OPINION disregarded the fact that negligent misrepresentation applies to product sales when there

claims. *See also* Doc. 380, ¶ 1099. The OPINION also contradicts precedent in finding that allegations meeting the criteria listed in *U.S. v. Weiss* do not satisfy Rule 9(b). OPINION, at 9; *Cf.* 630 F.3d 1263, 1269 (10th Cir. 2010).

**3(B). *The Enterprise Element & Operation and Management.*** The OPINION was mistaken in *only* conducting an association-in-fact analysis on the question of RICO enterprise, and in treating *Boyle* as holding that the "relationship" component in an association-in-fact analysis is not simply satisfied by the relationship of being joined in a "purpose." *Cf.* OPINION, at 11-12.[8] On a direct enterprise analysis, ACORD is clearly an enterprise. *See* 18 U.S.C. § 1961(4); COMPLAINT, Doc. 380, at ¶ 28. The OPINION also erred in finding that Plaintiffs had not pled facts suggesting operation and management, as it ignored facts in the Complaint meeting the most recent criteria of the Tenth Circuit. *See* OPINION, at 16-18.[9]

---

are material omissions as to the product's nature. *Keller v. A.O. Smith Harvestore Products, Inc.*, 819 P.2d 69, 72 (Colo. 1991); Doc. 380, ¶ 1167(a). As seen above, and in footnote 4, *supra*, the duties raised concern the CCPA, fraud, negligent misrepresentation, good faith, and constructive fraud. Similarly, in cases involving contracts, where there are also facts suggesting mistake or fraud, multiple claims are implicated, as the differences between the claims turn on issues of fact, such as state of mind. *See Sewell v. Great Northern Ins. Co.*, 535 F.3d 1166, 1172 (10th Cir. 2008). State of mind is a matter of inference for a jury, and is determined prior to a remedy. *See id.*; *Am. Commc'ns Ass'n, C.I.O., v. Douds*, 339 U.S. 382, 411 (1950).

[8] In short "a 'collection of persons who have joined together for a certain object.'" *Boyle*, at 945-46 (citations omitted). *See United States v. Hutchinson*, 573 F.3d 1011, 1022 (10th Cir. 2009). Furthermore, to find that a *standard-setting program* does not have a *purpose* is to go against the very meaning of the word "program" in English—something that strains credibility and that also fails to read the facts in the light most favorable to Plaintiffs. *See Flores-Figueroa v. US*, 129 S. Ct. 1886, (2009); Doc. 380, at ¶¶ 224 and 227; Doc. 391, at 9. *Cf. Boyle v. United States*, 556 U.S. 938, 945-48 (2009). The OPINION also mistakenly found that Plaintiffs have not provided any allegation connecting any Defendant to any particular category of involvement in ACORD. OPINION, at 13. Plaintiffs have, nonetheless, alleged one significant category of relationship that applies to *all* of the Defendants, *i.e.*, the relationship of "participant" in ACORD'S standards program. The allegations concerning what an ACORD "participant" is, were cast as admissions and were later admitted to come from ACORD'S website. *See* Doc. 380, at ¶¶ 159, 167, 174, 175, 177, 179, 180, 183(8), 183(15), 183(21), 183(22), 187, 189, 192, 193, 196, 205, 207, 209, 217, 221, 224-25; 263-64, 274, 281, 291-93, 297, 301-311, 315-28, 329-338, 387-400, 401-81, 482-512, *see also* Doc. 391, at 9. In this, the OPINION errs in finding that the differences between the Defendants are more significant than their shared association, as the *entire inquiry* in *Boyle* is about the *shared* purpose that is a relationship, *i.e.*, the one thing that unifies the group. *See also U.S. v. Chavis*, 461 F.3d 1201, 1207-08 (10th Cir. 2006) (referencing such additional details as being "icing on the cake"); *Cf.* OPINION, at 11-12. These similarities are particularly important for standards-setting associations. *See Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 US 492, 501, and n. 5 (1988). "A private party, on the other hand, may be presumed to be acting primarily on his or its own behalf." *Id.*

[9] *U.S. v. Hutchinson*, 573 F.3d 1011, 1033-34 (10th Cir. 2009) ("[a]n enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management.") (citation omitted). *Hutchinson* identified two options from among the circuit split: (1) knowingly implementing decisions made by upper management; or (2) exercising broad discretion in carrying out the aims of the enterprise. *Id.* at 1034. Facts alleged by the Plaintiffs satisfy either test—particularly the first—as all the Defendants have presumably implemented the ACORD standards and the aims of the boycott by participating in it. Similarly, although there are leaders that have been identified in connection

7

**3(C). Claims 4 & 10 - RICO Conspiracy and Civil Conspiracy (Opinion, at 18-19 & 22-23).** The OPINION errs in failing to recognize that RICO conspiracy is treated differently under the new standard governing RICO conspiracy in the Tenth Circuit, and similarly fails to recognize precedent governing the pleading and the nature of civil conspiracy.[10]

---

with the ACORD standards program, *i.e.*, ALLSTATE, MCKINSEY & COMPANY, and ACORD, and although there is a degree of direction that the participants accept by submitting to coercion, they still have direction over their employees and have some discretion in implementing the single business model imposed by the boycott. *See* Doc. 380, at ¶¶ 482-512; Doc. 445-12. *Hutchinson's* evidentiary inferences are not as specific or restrictive as the Court treats the burden in the OPINION. *See Hutchinson*, at 1034-35 (*e.g.*, "because it seems utterly doubtful that [co-defendants] would have allowed [defendant] to stay at the Alpine Rose if he was working independently," "it seems highly unlikely that they would have tolerated Mr. Gladney's presence as a rival supplier," "[t]he customer complained to Mr. Thompson who rebuked Mr. Montoya and gave the customer double the drugs to compensate," "[s]everal people...considered him their 'boss,'" and some showing of discretion to "fire" employees of one's own). Participants in ACORD share a single business model that is enforced through coercion. They, nonetheless, have a degree of control over their own employees and implementations. *See* Docs. 493-1, 445-12, 380, at ¶¶ 181, 182, 183(25), 244, 291, 295, 320-21, 330, 407, 429, 487-497, 559. Given these characteristics, the ACORD standards program shares the characteristics of an enterprise. *See, e.g.*, Doc. 380, at ¶ 174, 176, 178. This is true whether a defendant is an employee or an "outsider" and applies to positions of guidance, as that held by MCKINSY & COMPANY. *See* Doc. 380, at ¶ 270; *Reves v. Ernst & Young*, 507 U.S. 170, 178-79 (1993). In this, "the phrase 'directly or indirectly' makes [it] clear that RICO liability is not limited to those with a formal position in the enterprise . . ." *Id. See also Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1541-42 (10th Cir. 1993); Doc. 380, ¶¶ 1123-25. Furthermore, "decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc." *Boyle v. United States*, 556 U.S. 938, 948, 129 S. Ct. 2237, 2245 (2009); Doc. 380, ¶¶ 185, 195. *See also* footnote 8, *supra*, as to the nature of participants in the standards program.

[10] A new standard for the Tenth Circuit is recognized in *Boyle* and *Hutchinson*. *United States v. Hutchinson*, 573 F.3d 1011, 1021-22 (10th Cir. 2009). The OPINION also ignores the fact that the Tenth Circuit now applies the rule in *Salinas* and *Harris*, where "§ 1962(d) does not require the Government to establish that an enterprise existed." *United States v. Harris*, 695 F.3d 1125, 1132 (10th Cir. 2012) (citation omitted). Section "1962(d) simply makes it criminal 'to conspire' to do so." *Id.* at 1132 (citation omitted). "There is no requirement of some overt act or specific act in the statute. . .'" *Id.* at 1132-33 (citation omitted). "In light of these differences, the *Salinas* Court concluded that to prove a violation of § 1962(d), 'it suffices that [a defendant] adopt the goal of furthering or facilitating the criminal endeavor,' so long as that endeavor would, '*if completed*, ... satisfy all the elements of a substantive criminal offense.'" *Id.* In this respect, the boycott is, of course, a conspiracy, and any aims it has to withhold material information and to use the mails and wires routinely, would qualify it as a RICO conspiracy. *See id.* "The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense." *Id.* at 1133. "Each member of a conspiracy, while the conspiracy exists, is liable for the reasonably foreseeable crimes of his co-conspirators." *Id.* at 1136 (citation omitted); *see also United States v. Russell*, 963 F.2d 1320, 1322 (10th Cir.1992). With regard to civil conspiracy, the OPINION errs in applying Colorado state evidentiary standards for summary judgment to federal pleading. *Hill v. Allstate Ins. Co.*, 479 F.3d 735, 739 (10th Cir.2007); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002); *Cf. Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995). Furthermore, the OPINION errs in only addressing one kind of conspiracy recognized in Colorado law, and in being too restrictive in its definition of the claim, as the claim also concerns concerted action. *McGlasson v. Barger*, 431 P.2d 778, 780 (Colo. 1967). It also errantly applies its standard to mere negligence and joint liability in concerted action, pursued through § 13-21-111.5, C.R.S. *See* Doc. 445-4, at 3-5. With regard to negligence, the OPINION errs in applying a third-party standard to the first-party setting of the present case. *Cf.* OPINION, at 29-30; *Farmers Grp., Inc. v. Trimble*, 691 P.2d 1138, 1143 (Colo. 1984); *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 528 (Colo. App. 2008).

8

**3(D). *Claims 14, 15 & 16 - Breach of Contract and Bad Faith (Opinion, at 25-27)*.** The OPINION, at 5 and 26, errs in dismissing for Plaintiffs' not quoting the contract or attaching a copy.[11] The OPINION, at 26, incorrectly states that the "gist" of Plaintiffs' claims—that the policies themselves contained terms inconsistent with what Plaintiffs thought they had agreed to in the application and sale process—offers no relief at law.[12] The OPINION also errs in finding it "wrong that the application process yielded any binding contract."[13] As to the "bad faith" claims, the OPINION errs in finding that violations of public

---

[11] *See Fletcher v. Peck*, 10 U.S. 87, 3 L. Ed. 162 (1810). Furthermore, the COMPLAINT, Doc. 380, was filed on November 25, 2014. *See* OPINION, at 3. At that time, Fed.R.Civ.P. 84 was in force; wherein Forms 17 and 21 indicate that neither quotation nor attachment of a contract is required. Plaintiffs, nonetheless, summarized the salient terms of their contracts and points of contention. *See, e.g.,* COMPLAINT, Doc. 380, at ¶¶ 881-908, 1013-1038; ¶¶ 625-972), the OPINION therefore erred in finding that "Plaintiffs have not identified any actual provisions of the policies or explained how Defendants breached them." *Cf.* OPINION, at 25. Plaintiffs' have specifically alleged the covenant of good faith and fair dealing, which is sufficient to prevent dismissal of a claim. *Genova v. Banner Health*, 896 F. Supp. 2d 993, 998 (D. Colo. 2012) *aff'd*, 734 F.3d 1095 (10th Cir. 2013).

[12] The OPINION's unfounded criticism of the "gist" of Plaintiffs' claim contradicts governing precedent in almost word-for-word fashion. *See Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1049-50 (Colo. 2011); *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1364 (Colo. 1993); *Pompa v. American Family Mut. Ins. Co.*, 520 F.3d 1139, 1143 (10th Cir.2008); *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F 3d 1184, 1190 (10th Cir.2009); *N.A. v. St. Paul Fire & Marine Ins. Co.*, 35 F 3d 494, 496 (10th Cir.1994); *Worsham Constr. Co. v. Reliance Ins. Co.*, 687 P 2d 988, 990 (Colo.App.1984). The OPINION, at 26, also fails to note that "*every lawsuit* over insurance coverage is a valuation dispute to the extent that the parties disagree about how much should be paid under a policy, or whether the policy provides for coverage at all." *Vaccaro v. Am. Family Ins. Grp.*, 2012 COA 9, ¶ 47, 275 P.3d 750, 760 (emphasis added). The "reasonable expectation doctrine," requires that a court read the policy consistent with the understanding of an "ordinary insured." *Bailey v. Lincoln General Ins. Co.*, 255 P.3d 1039, 1048–51 (Colo.2011). Because the boycott's definition of "actual cash value," contravenes the law, *i.e.*, the USPAP, there is a strong indication that it is applied against reasonable expectations. *See* Doc. 380, at 184, 227, 232, 232, n. 13, and ¶¶ 391-400, 423, 480, 672, 677-678, 691, 944, 946, 1252; § 12-61-710(1)(g), C.R.S.

[13] *See Pappageorge v. Fed. Kemper Life Assur. Co.*, 878 P.2d 56, 59-60 (Colo. App. 1994); *Farmers New World Life Ins. Co. v. Crites*, 29 Colo. App. 394, 398 (1971). The case cited by the OPINION as support for the proposition that the law somehow applies an *ad hoc* rule to insurance contracts where the policy simply replaces the terms of the application—with no basis in the language of the application—does not actually support that reading, as can be seen upon closer inspection. *See Griffin v. State Farm Fire & Cas. Co.*, 104 P 3d 283, 286 (Colo. App. 2004) ("The application clearly indicated that underwriting was anticipated, if not required, and called for the issuance of a binder and policy, neither of which was issued.") (emphasis added). "[A]s a general rule, insurance policies are construed according to the same principles that apply to other contracts." *Ballow v. PHICO Ins. Co.*, 875 P 2d 1354, 1364 (Colo. 1993)(citation omitted). Offers set the terms of the agreement. *Carr v. Duval*, 39 U.S. 77, 83 (1840); *see also Baldwin v. Peters, Writer & Christensen*, 141 Colo. 529, 531 (1960)(citing *Salomon v. Webster*, 4 Colo. 353, 361 (1878); Williston on Contracts, Vol. 1, sec. 51; *Van Hall v. Gehrke*, 117 Colo. 223, 228 (1947)). Where there is no exact meeting of the minds, there is no contract, and such a "contract" is further voidable if it is against public policy. *W. Air Lines v. Hollenbeck*, 124 Colo. 130, 137, 235 P.2d 792, 796 (1951); *see also Metro. Life Ins. Co. v. Banion*, 106 F.2d 561, 564 (10th Cir. 1939). "We have previously recognized that 'a contractual provision is void if the interest in enforcing the provision is clearly outweighed by a contrary public policy." *FDIC v. American Cas. Co.*, 843 P.2d 1285, 1290 (Colo.1992) (citation omitted). "We have extended this principle to the conditions and terms of an insurance contract that undermine legislatively-expressed public policy." *Huizar v. Allstate Ins. Co*, 952 P.2d 342, 344 (Colo.1998) (citation omitted). Colorado public policy dictates that the coverage of the policy be clearly communicated at sale. *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1049-50 (Colo. 2011); Department of Regulatory Agencies Regulation

policy are "fairly debatable," particularly because it found so as a matter of law, before a fact finder determined reasonableness. *See Vaccaro v. Am. Family Ins. Grp.*, 2012 COA 9, ¶ 47, 275 P.3d 750, 760.[14]

**4. ORAL ARGUMENT**: As noted, issues of fact and law overlap on many claims. It is respectfully submitted that ten pages cannot adequately address all of the legal errors in the OPINION as to the other claims, and, as dismissal is a "last resort," given the noted errors, it should not rest on unchallenged errors. On this basis of due process, oral argument is requested.

**WHEREFORE**, Plaintiffs ask that the Court grant the requested relief and such other relief as is just.

Dated: March 11, 2016.

Honestly and respectfully submitted,

By:   s/ Josue David Hernandez, Esq.
*Josue David Hernandez, Esq.*
P.O. Box 838
Denver, CO 80201
*Telephone*: (720) 712-9553
*Facsimile*: (303) 200-7801
E-mail: josue.hernandez@lawyer.com
ATTORNEY FOR THE PLAINTIFFS

**CERTIFICATE OF SERVICE:** I hereby certify, pursuant to D.C.Colo.L.Civ.R. 6.1(c), that on March 11, 2016, I electronically filed the foregoing using the CM/ECF system.

s/ Josue David Hernandez, Esq.
JOSUE DAVID HERNANDEZ, ESQ.

---

No. 6–1–1, 3 Code Colo. Reg. 702-6, §§ 4.A and B.1; §§ 10-3-1104(1)(h)(VIII) and (IX), C.R.S. "[I]t is the policy of this state, announced in section 10-1-101, 4A C.R.S. (1987), that all persons providing insurance services to the public must 'be at all times actuated by good faith in everything pertaining thereto.'" *Ballow*, at 1363. These issues are particularly significant, as the allegations suggest that some Plaintiffs were not even provided policies. *See* Doc. 380, ¶¶ 633, 661, 741, 752, 789, 793.

[14] When insurers fail to fully and fairly convey the extent of coverage, they undermine a fundamental public policy behind insurance. *See Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1049-50 (Colo. 2011). The duty of good faith and fair dealing is explicitly applicable to the negotiation context, and "bad faith" is specifically available outside the claims setting. *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1362-63 (Colo. 1993). The duty "permeates *all* of the dealings of the parties." *Id.* (citations omitted and emphasis added). The OPINION's use of the word "valid" demonstrates that it has relied on STATE FARM'S argument, made in Doc. 390, at 55. That argument, however, has been termed erroneous by the Colorado Court of Appeals, as it contradicts Colorado statute. *See Fisher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 57, ¶¶ 31-35; OPINION, at 27.