**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-01736-JLK

DALE SNYDER, et al., individually, and on behalf of all others similarly situated,

      Plaintiffs,

v.

ACORD CORPORATION, a Delaware non-profit corporation, et al.,

      Defendants.

---

**MEMORANDUM OPINION AND ORDER AWARDING ATTORNEY FEES**

---

Kane, J.

      After dismissing Plaintiffs' claims in this case, I ruled that Joint Defendants[1] are entitled to an award of attorney fees under Colorado Revised Statute § 13-17-201. Order Att'y Fees at 2, ECF No. 526. The Court of Appeals for the Tenth Circuit has since similarly concluded that Joint Defendants are entitled to an award of their appellate attorney fees under § 13-17-201. 05/26/17 COA Order at 2, ECF No. 557. The matters remaining for me to determine are the amount of the attorney fees that were reasonably and necessarily incurred by Joint Defendants in defending this action, both at the trial level and on appeal, and whether Joint Defendants are entitled to an award against Plaintiffs' counsel personally under 28 U.S.C. § 1927.

---

[1]"Joint Defendants" and the specific fees sought by each moving Defendant are identified in their Reply to Plaintiffs' Summary of Attorneys' Fees Billings (ECF No. 619). Defendants Insurance Services Office, Inc. and Verisk Analytics, Inc. previously moved to withdraw from the Motion for Award of Attorneys' Fees, and I have granted their request (ECF No. 613).

## I. Background

Plaintiffs are insured homeowners whose homes were destroyed by fires or flood damage, prompting them to bring this class action against their insurance companies and a network of other insurers and entities. The initial complaint was filed on June 21, 2014. It was amended three times, eventually resulting in the 260-page, 1,363-paragraph Third Amended Complaint (ECF No. 380), which asserted 23 claims—including RICO[2], antitrust, and state law conspiracy claims—against 113 defendants.

Organizing themselves into various groups, Defendants filed four main motions to dismiss. *See* Defs.' Summ. Mots. to Dismiss at 1-3, ECF No. 419. I granted the motion to dismiss filed by Defendant State Farm, and joined by all Defendants, on the basis that the Third Amended Complaint failed to comply with the requirement in Federal Rule of Civil Procedure 8(a) that a claim for relief in a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[3] Plaintiffs reacted by filing a 105-page motion for relief from the final judgment. Finding that motion to be "absurdly prolix" and Plaintiffs to have "ignored my repeated suggestion that briefs . . . be kept to a reasonable length," I ordered that the motion and its accompanying documents be stricken. Order Mot. to Strike at 1, ECF No. 494. I permitted Plaintiffs to refile their motion but restricted its length to ten pages. *Id.* Plaintiffs submitted an amended motion, using an almost illegible kerning. *See* Am. Mot. for Relief from J., ECF No. 497.  I denied their amended motion for relief from the judgment, and they appealed. The Tenth Circuit affirmed, deciding that I did not abuse my discretion in dismissing the Third Amended Complaint "for want of a simple, concise statement of the claims, one that would

---

[2]The Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. §§ 1961 to 1968.
[3]I further found that Plaintiffs' claims were deficient under Federal Rule of Civil Procedure 12(b)(6). *See* Dismissal Order at 7-30, ECF No. 478.

provide fair notice of the claims asserted against each defendant . . . ." 04/06/2017 COA Order at 8, ECF No. 553.

In the meantime, Joint Defendants moved for attorney fees under Colorado Revised Statute § 13-17-201 and 28 U.S.C. § 1927. I granted the motion under the Colorado statute but deferred ruling on the specific amount of the award and whether Joint Defendants were entitled to fees against Plaintiffs' counsel personally until after the appellate mandate issued. Order Att'y Fees at 2.

After affirming my order dismissing the case, the Tenth Circuit also awarded appellate attorney fees to Joint Defendants under Colorado Revised Statute § 13-17-201. 05/26/17 COA Order at 2. The court remanded the case and directed me to ascertain the amount of the appellate attorney fees that Joint Defendants reasonably and necessarily incurred. *Id.* It then sanctioned Plaintiffs' counsel in the amount of $500 for attempting to circumvent the type-volume limitations for appellate briefs. 07/03/17 COA Order at 2, ECF No. 563.

On remand, Plaintiffs and Joint Defendants disputed how determination of the amount of the fee award should proceed. I considered their respective positions and issued a scheduling order (ECF No. 565) setting a standard briefing schedule and requiring Joint Defendants to produce their invoices supporting their fee request. Plaintiffs chose not to comply with the schedule and, instead, filed a Motion to Dismiss the Moving Defendants' Claims for Attorneys' Fees Pursuant to Fed.R.Civ.P. 12(b)(6) (ECF No. 573) and a Motion: (1) to Compel Basic Discovery or for Other Appropriate Sanctions Pursuant to Fed.R.Civ.P. 26; (2) In the Alternative, for Referral of the Parties' Discovery Disputes to a Magistrate Judge; (3) To Modify the Scheduling Order, and; (4) For a Hearing of Certain Factual Issues by an Advisory Jury if

Plaintiffs' Fed.R.Civ.P. 12(b)(6) Motion is Not Granted (ECF No. 574).[4] Perceiving those Motions to be completely without merit and "prolix, redundant, and meandering," I ordered that they be stricken. Order Striking Pls.' Att'y Fee Mots. at 1, 4, ECF No. 578.

On March 5, 2018, after both sides had submitted two briefs on the matter—an opening brief, response, reply, and surreply, I held an evidentiary hearing with oral argument. At that time, Plaintiffs' counsel requested that I permit Plaintiffs to submit updated summaries of their critique of Joint Defendants' fee calculation. 03/05/18 Trans. at 55:13-20, ECF No. 620. I acquiesced and authorized a supplementary response by Joint Defendants as well. *Id.* at 70:19-21. In the end, then, the filings associated with this Order are: Joint Defendants' Opening Brief for Determination of Amount of Attorneys' Fees to be Awarded (ECF No. 581), Plaintiffs' Brief Responding to the Joint Defendants' Opening Brief for Determination of Amount of Attorneys' Fees to be Awarded (ECF No. 592), the Reply in Support of Joint Defendants' Opening Brief for Determination of Amount of Attorneys' Fees to be Awarded (ECF No. 598), Plaintiffs' Subsequent Brief Regarding the Determination of Attorneys' Fees to be Awarded (ECF No. 601), the Stipulation between Plaintiffs and Certain Defendants (ECF No. 606), the Amended Affidavit of Kevin Shea in Support of Certain Defendants' Motion for Attorney Fees (ECF No. 608), Plaintiffs' Summary of Attorneys' Fees Billings (ECF No. 614), the Notice of Filing Concerning Plaintiffs' Amended Summary of Attorneys' Fees Billings Pursuant to Fed. R. Civ. P. 15(a)(A)(A) and D.C.COLO.LCivR 15.1(a) (ECF No. 618), and Joint Defendants' Reply to Plaintiffs' Summary of Attorneys' Fees Billings (ECF No. 619).

---

[4]These Motions were not Plaintiffs' only attempts to circumvent the scheduling order. During the extension they were granted to file their response to Plaintiffs' Opening Brief on the amount of the award, they submitted a Motion to Schedule Adversarial Submissions, Pursuant to Fed. R. Civ. P. 54(d)(2)(C), and to Address Evident Double Billing and Witnesses Credibility Issues (ECF No. 590). That Motion was promptly denied as impermissible and groundless. *See* Order Adversarial Submissions at 1-2, ECF No. 591.

I have struggled to decipher Plaintiffs' legal arguments throughout this case. Those that pertain to the attorney fee award are no exception.[5] As such, the following analysis considers Plaintiffs' positions to the extent I have been able to extract them from the morass.

## II. Amount of the Attorney Fee Award under Colorado Revised Statute § 13-17-201

I have already found that Plaintiffs' claims in this case sounded primarily in tort, requiring me to award attorney fees to Joint Defendants under Colorado Revised Statute § 13-17-201.[6] Order Att'y Fees at 1-2. Left for me to determine is the amount of fees Joint Defendants reasonably and necessarily incurred in "defending the action." Colo. Rev. Stat. § 13-17-201. To do so, I must calculate the lodestar amount, which "is the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The moving party is expected to submit adequate documentation supporting the hours worked and rates claimed. *Hensley v. Eckerhart*, 461 U.S.

---

[5]*See, e.g.*, Surreply Att'y Fee Award at 2 n.2, ECF No. 601 ("As made clear in Plaintiffs' Brief, the Joint Defendants' error lies in failing to use a methodology that meets the legal definition of the lodestar analysis. ECF No. 592 at 6. Nonetheless, Joint Defendants continue to confuse the *Johnson* "factors" with the lodestar analysis: accusing Plaintiffs of simply attacking Mr. Shea's "choice of reasonableness factors." *See* Reply at 3. As Plaintiffs have made clear, however, the lodestar still utilizes the *Johnson* factors. ECF No. 592 at ¶ 16. Nonetheless, both the Tenth Circuit and the Supreme Court distinguish the lodestar from the *Johnson* factors, holding that the *Johnson* factors are incomplete and that something more is required: an "objective" approach *Ramos* identifies as a "formula." *See* ECF No. 592 at ¶¶ 16-17 (citing *Perdue v. Kenny A. Ex rel. Winn*, 130 S.Ct. 1662, 1672 (2010); *Ramos*, 713 F.2d at 552). As these cases make clear, "factors" and "analyses" are two different things, as an "analysis" is something that makes particular use of "factors." *See id.* Furthermore, the lodestar analysis preforms [sic] a necessary function that relevant factors themselves simply cannot. *Ramos*, 713 F.2d at 552-53 ("[a] formula is necessary to translate the relevant factors into terms of dollars and cents")(emphasis added).").
[6]The statute provides: "In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant *shall have judgment* for his reasonable attorney fees in defending the action." (emphasis added). Colo. Rev. Stat. § 13-17-201.

424, 433 (1983). If Joint Defendants carry their "burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be a reasonable fee . . . .'" *Robinson*, 160 F.3d at 1281 (quoting *Cooper v. Utah*, 894 F.2d 1169, 1171 (10th Cir. 1990)).

Joint Defendants' Opening Brief on the amount of the attorney fee award (ECF No. 581) calculated the total lodestar at $1,775,855.69. That amount has since been reduced by: (1) the voluntary cut in fees by Defendant Sentry Insurance and the Fireman's Fund Defendants, *see* Notices Reduction of Fees, ECF Nos. 588 & 589, (2) the Amended Affidavit of Joint Defendants' expert (ECF No. 608), and (3) the abandonment of the motion for fees by Defendants Insurance Services Office, Inc. and Verisk Analytics, Inc., *see* Ord. Withdraw Mot. for Fees at 1, ECF No. 613. Thus, the final award sought by Joint Defendants is $1,597,602.66. Reply Pls.' Summ. Att'y Billings at 4, ECF No. 619.


A. Opinions Submitted

Along with their counsel's affidavits and fee invoices, Joint Defendants have submitted Affidavits from the highly experienced civil litigator Kevin Shea (ECF Nos. 581-2 to 581-15, 608, 608-1). His analysis of the fees billed is meticulous and persuasive. To the extent Plaintiffs challenge Mr. Shea's qualification as an expert, I find his Affidavits are based on sufficient facts and data, his opinions are the product of reliable principles and methods, and he reliably applied those principles and methods to the facts. *See* Fed. R. Evid. 702. Without a doubt, Mr. Shea has employed before this Court "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," here, the practice of law. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

Plaintiffs' primary challenge to Mr. Shea's opinion is that he allegedly does not address the principal requirement of the lodestar method—that the hours expended by counsel were necessary. This argument is hollow. First, Mr. Shea outlines in detail the work that was necessary in defending the action. Shea Aff. at 15-18, ECF No. 581-2. Second, he specifically takes into account that many of Joint Defendants' attorneys did not bill their clients for all the fees they incurred and/or are not requesting all of the fees that were actually billed to and paid by their clients. *Id.* at 13. And, third, Mr. Shea reduced many of the invoices based on his evaluation of the reasonableness of the work performed. *See, e.g.*, *id.* Ex. 6 at 2, ECF No. 581-4; *id.* Ex. 14D at 1, ECF No. 581-9. His analysis unquestionably speaks to whether the hours expended were necessary.

To counter Mr. Shea's conclusions, Plaintiffs do not provide an expert opinion. Instead, Plaintiffs' counsel holds himself out as their expert, assessing the requested fees using a 24-factor test[7] he concocted. Resp. Amount Att'y Fee Award at 7 n.6, ECF No. 592. I find this

---

[7]According to Plaintiffs:

> Relevant factors include: (**1**) whether there are "meticulous, contemporaneous time records" *Ramos*, 713 F.2d at 553; (**2**) "how those hours were allotted to *specific* tasks" *id.* (emphasis added); (**3**) "distinguish[ing] 'raw' time from 'hard' or 'billable' time" *id.*; (**4**) "time spent reading background cases ... reporters, and other materials designed to familiarize the attorney with this area of the law — time that would be absorbed in a private firm's general overhead and for which the firm would not bill a client" *id.* at 554; (**5**) explanation, as opposed to mere description, of time employed in the billings (*id.*); (**6**) "duplication of services," *i.e.*, "if the same task is performed by more than one lawyer," thereafter "reviewing with particular care the number of lawyers present at hearings, depositions, and other discovery proceedings, and [accounting for] ... the roles played by the lawyers in the litigation" *id.*; (**7**) "[n]o fees should be awarded for hours reported by lawyers ... who do not participate in or contribute to the proceedings" *id.* n. 4; (**8**) "what lawyers of comparable skill and experience practicing in the area in which the litigation occurs" charge and "[t]he fee rates of the local area" *id.* at 555; (**9**) the attorney's "customary rate" *id.*; (**10**) "any fee agreement, including those between attorney and client, between attorneys sharing a fee to be awarded" Fed.R.Civ.P. 54, Notes of Advisory Committee on Rules—1993 Amendment; (**11**) "the terms of

approach to be unreliable and bewildering. Nevertheless, without donning the green eyeshade of the accountant, *see Fox v. Vice*, 563 U.S. 826, 838 (2011), I have gleaned from it what I can.

With these submissions framing my view, I first consider whether the number of hours for which Joint Defendants' seek reimbursement were reasonably expended.

B. Reasonableness of the Hours Expended

In *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983), the Tenth Circuit suggested a number of factors to be considered in determining the reasonableness of the hours expended. The court has summarized them as: "(1) whether the tasks being billed 'would normally be billed to a paying client,' (2) the number of hours spent on each task, (3) 'the complexity of the case,' (4) 'the number of reasonable strategies pursued,' (5) 'the responses necessitated by the maneuvering of the other side,' and (6) 'potential duplication of services' by multiple lawyers." *Robinson*, 160 F.3d at 1281 (quoting *Ramos*, 713 F.2d at 553). I approach the reasonableness

---

any agreement about fees for the services for which the claim is made" Fed.R.Civ.P. 54(d)(2)(B)(iv); (**12**) whether they lawyers concerned "have been paid for their services" *Ramos*, 713 F.2d at 555; (**13**) "the level of performance and skills of each lawyer" *id*.; (**14**) whether work is "clearly nonfrivolous" *id*. at 556; (**15**) "appropriate time records" *id*.; (**16**) whether a lawyer acted "reasonably under the circumstances" *id*.; (**17**) "the policy being vindicated" *id*. at 557; (**18**) whether an "an excessive amount of lawyer time [was spent] simply overwhelm[ing an opponent] in a case in which the litigation onslaught was unnecessary" *id*.; and (**19**) whether there is a "contingency factor." *Id*. at 558. Given the applicable law, and "whether the tasks sought to be charged to the adverse party would normally be billed to a paying client," (*id*. at 554), (**20**) double-billed funds would be excluded, (**21**) recycled billing; (**22**) fees for pursuing fees and procedurally defective fee applications, *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990); (**23**) non-attorney tasks being billed by attorneys at attorney rates; or (**24**) fees incurred defending sanctions attributable to attorney acts and omissions. *See, e.g., Att'y Grievance Comm'n v. Culver*, 849 A.2d 423, 445 (Md. 2004) (charging client to oppose sanction attributable to lawyer's actions).

Resp. Amount Att'y Fee Award at 7 n.6.

inquiry and evaluation of these factors "much as a senior partner in a private firm would review the reports of subordinate attorneys when billing clients whose fee arrangement requires a detailed report of hours expended and work done." *Ramos*, 713 F.2d at 555. However, I "need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a 'request for attorney's fees should not result in a second major litigation.'" *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996) (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1203 (10th Cir.1986); *Zuchel v. City and Cnty. of Denver*, 997 F.2d 730, 745 (10th Cir. 1993)).

I find the most significant factor for determining the proper amount of the present fee award is that Joint Defendants' request includes only hours for which they were actually billed by and paid their counsel. Mr. Shea gives great weight to this fact and notes that such consideration is especially warranted since Joint Defendants are sophisticated entities often with long-standing relationships with their counsel. Shea Aff. at 14, 22, ECF No. 581-2. These Defendants could select the counsel of their choice and many negotiated discounted rates. It is highly unlikely that counsel would jeopardize these relationships by overbilling their clients. Still, Joint Defendants do not seek total compensation for all of the hours expended by their counsel or at the full rate paid.

Moving parties are instructed to "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. As discussed above, Joint Defendants' counsel along with Mr. Shea have done just that by eliminating both the hours expended and those billed that were deemed to be unreasonable. *See, e.g.*, Shea Aff. Ex. 2A at 4, ECF No. 581-2 (counsel excluding amounts for billed work that was possibly duplicative or for which their client was not seeking reimbursement, totaling $72,813);

*id.* Ex. 4E at 6, ECF No. 581-4 (counsel redacting the invoices for irrelevant matters); *id.* Ex. 6 at 2, ECF No. 581-4 (Mr. Shea deducting $871 from the invoices for duplication, $105 for preparing an audit response letter, and $211 for a pro hac vice fee); *id.* Ex. 7 at 3, ECF No. 581-4 (Mr. Shea eliminating $276 charged for an audit letter); *id.* Ex. 8A at 4-5, ECF No. 581-5 (counsel removing $4,302.50 in fees which Defendant paid but was not seeking to recover); *id.* Ex. 14D at 1, ECF No. 581-9 (Mr. Shea reducing the fee requested by $2,065 for entries reflecting the duplication of work by two firms). This is not a case in which clients have chosen "the 'Cadillac' of law firm representation" and expect the opposing party to make the car payments. *Grynberg v. Ivanhoe Energy, Inc.*, No. 08-cv-02528-WDM-BNB, 2011 WL 3294351, at *6 (D. Colo. Aug. 1, 2011).

Plaintiffs seem to argue that Joint Defendants must present to the court every hour counsel expended even if it is not included in the fee request and, at the same time, that counsel's invoices must be separated out into "compensable" and "non-compensable" time. This line of thinking is typical for Plaintiffs in this case. It would only serve to waste resources for Joint Defendants to submit documentation of the hours their counsel expended but for which they are not seeking reimbursement. Counsel made the first cull; then, Mr. Shea identified additional hours he felt were not reasonably expended or that were not rightfully part of the fee request. The hours remaining are those for which Joint Defendants and their expert claim an award of fees is proper. Nothing more is required.[8] On the whole, I find the hours expended on each task, as reduced by Joint Defendants' counsel and Mr. Shea, to be reasonable.[9]

_____

[8]To the extent Plaintiffs contend that the records submitted by Joint Defendants are inadequate, they are mistaken. The records conform with standard practice and are organized "in a meaningful way with a comprehensive summary so that the material is understandable and easily reviewable." *Robinson*, 160 F.3d at 1285 n.11 (internal quotation marks and citation omitted).
[9]Despite Plaintiffs' repeated accusations, I see no evidence of double billing or conversion by Joint Defendants' counsel. A number of firms represented multiple defendants in this case and

The complexity of this case further supports the reasonableness of the hours expended. Plaintiffs asserted 23 claims against each of the 113 Defendants, alleging a broad, multi-decade conspiracy. The case was disposed of at the earliest stage on a motion to dismiss, yet there are still over 600 docket entries. It was fully foreseeable and is reasonable that such a case would require Defendants' counsel to expend thousands of hours defending it. I am unpersuaded by Plaintiffs' argument that the blame lies with Defendants for their rejection of Plaintiffs' qualified offers to decrease the number of parties involved. Plaintiffs initiated this litigation and were in control of its course. There is no indication Defendants' counsel acted unreasonably or stepped outside the bounds of competent representation of their clients. Plaintiffs cannot now complain that the fees incurred by Defendants are excessive because such an inordinate number were forced to take part.

In any case, Joint Defendants have demonstrated that they worked together as much as possible. Since many are direct competitors, though, it was impossible for a single firm or even a handful of firms to represent all. Defendants' counsel reduced the overall number of hours expended by joining motions and coordinating responses. Each could have filed an independent motion to dismiss detailing every applicable defense. Instead, however, they collaborated and joined other Defendants' motions where possible. *See* Defs.' Summ. Mots. to Dismiss at 1-3. Of course, coordinating in such a way could not have occurred without incurring fees for sending emails, participating in conference calls, reviewing drafts, etc.

Plaintiffs suggest Defendants pursued unreasonable strategies by filing many motions to dismiss that were ultimately found to be moot and by opposing their motion for an extension of

---

split the billed time between their clients. *See, e.g.*, Shea Aff. Ex. 7A at 2, ECF No. 581-4 (describing BakerHostetler's representation of sixteen defendants, comprised of five client groups). This served to reduce the costs for all.

time to respond to the motions to dismiss. To be sure, in dismissing Plaintiffs' case in its entirety, I declared the remaining pending motions to be moot. Doing so, however, was in no way a judgment of the merit or necessity of the motions; it was merely to prevent the court (and the parties) from wasting time and resources on matters which no longer needed to be addressed. *See* Dismissal Order at 30, ECF No. 478 ("In light of the dismissal of all of the Plaintiffs' claims, the other pending motions in this action . . . are DENIED AS MOOT."). Defendants could not have predicted with certainty which motions would prove successful, and Plaintiffs have failed to show that any were unnecessary or unreasonable at the time they were filed.[10]

As for Defendants' opposition to Plaintiffs' request for a six-month extension to respond to the motions to dismiss, Defendants had good reason. Drawing out the case over that time could substantially increase costs and subject them to greater uncertainty. Plaintiffs complain that "Defendants spent considerably more time opposing Plaintiffs' extension in conferral than they spent dealing with Plaintiffs' motion for an extension." Brief Responding at 4, ECF No. 592. I prefer such to be the case in my Court, as the parties have a duty under Federal Rule of Civil Procedure 1 to "secure the just, speedy, and inexpensive determination of every action and proceeding." Even so, from the emails and affidavits submitted with the briefing on Plaintiffs' motion for the extension, it is apparent that the time Defendants spent conferring was

---

[10]Contrary to Plaintiffs' paradigm, nothing in the reasonableness standard requires that the fees be assessed with the benefit of hindsight. Reasonable arguments and strategies that are not ultimately determinative or successful need not be excluded from the recovery amount when complete vindication is achieved. *See Robinson*, 160 F.3d at 1284; *Lucas v. Kmart Corp.,* No. 99-01923, 2006 WL 2729260, at *4 (D. Colo. July 27, 2006) (citing *Hensley*, 461 U.S. at 435, in support of its conclusion that the plaintiffs were not precluded from recovering fees for work done on tasks that were ultimately unsuccessful since overall result was favorable); *Infant Swimming Research, Inc. v. Faegre & Benson, LLP*, No. 07-cv-00839-LTB-BNB, 2008 WL 5044499 at * 2 (D. Colo. Nov. 19, 2008) ("Although it is clear that a significant amount of time was spent on both litigation strategy and settlement negotiations—including early attempts at a quick settlement and an apparent settlement agreement that fell through—this was the nature of this litigation and was part and parcel of defending this case.")

necessitated by the indecision and garrulity of Plaintiffs' counsel. *See* Mot. for Extension Ex. 1, ECF No. 421-1 (contrasting the multi-page waffling of Plaintiffs' counsel with the concise responses of Defendants' counsel); Resp. to Mot. for Extension Ex. 1, ECF No. 424-1 (cataloguing the communications back and forth and the evolving proposal of Plaintiffs' counsel). I find there is no basis to conclude Defendants pursued any strategies other than ones that were limited and reasonable.

While the email exchanges between the parties do not establish that Joint Defendants pursued unreasonable strategies, they do reveal how Plaintiffs' maneuvering demanded exceptional responses from Defendants. Perhaps Plaintiffs did not grasp that for each email sent, dozens of lawyers for Defendants would have to review the contents, and Defendants would have to pay for this service. The longer the email and the more frequent the emails, the greater the cost. *See, e.g.*, Shea Ex. 10B 01/23/15 Invoice at 2-3, ECF No. 581-6.

In the same way, the verbose, unreasoned filings and numerous errata submitted by Plaintiffs forced Joint Defendants' counsel to expend more time defending this action than would generally be expected.[11] Plaintiffs' motion for an extension of time to respond to the motions to dismiss provides a prime example. Plaintiffs' motion (ECF No. 421) was 40 pages. Defendants' Response (ECF No. 424) to Plaintiffs' Motion was only seven pages. Yet, still, Plaintiffs submitted a reply (ECF No. 429) of 47 pages. As I explained at the hearing on the motion, it was

---

[11]*See, e.g.*, Shea Aff. Ex. 6A at 3, ECF No. 581-4 ("Plaintiffs' counsel filed prolix and disjointed pleadings, briefs and other documents at all stages of this case, forcing [Defendants' counsel] to spend many hours attempting to decipher his rambling submissions. Plaintiffs' counsel further bombarded the defendants with lengthy diatribe-laden emails making demands and attempting to 'trap' the defendants into taking positions that he thought would be helpful to his clients' causes. All of this further materially increased the number of hours that [Defendants' counsel] was forced to devote to this matter.")

the lengthiest one I had ever seen or heard of and, to me, it "illustrates a system gone mad." 01/29/15 Trans. at 2:17-22, ECF No. 432.

Considering all of these factors and in particular the complexity of the case and the way in which Plaintiffs chose to litigate it, the expenditure of time by Joint Defendants' counsel was reasonable. The hours for which Joint Defendants now seek reimbursement are not "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.[12]

C. Reasonableness of the Claimed Rates

Finding the hours expended to be reasonable, I move on to the reasonableness of the rates sought. Mr. Shea capped the rates on the invoices of Joint Defendants' counsel at $625 for experienced partners, $425 for associates, and $200 for paralegals.[13] Shea Aff. at 20-21, ECF No.

---

[12]Although Joint Defendants are not seeking fees for litigating their motion for attorney fees and Mr. Shea has eliminated these fees from the billings, *see* Opening Br. at 4 n.3, ECF No. 581, Shea Aff. at 14, ECF No. 581-2, Shea Am. Aff. at 1-2, ECF No. 608, Joint Defendants could still be entitled to them, especially with respect to litigating the amount of the award. Citing to *Wyles v. Aluminaid Int'l, A.G.*, No. 15-cv-00393-CMA-KMT, 2016 WL 300845, at *4 (D. Colo. Jan. 25, 2016), Plaintiffs incorrectly assert that "fees for fees" are not permitted. Pls.' Summ. Att'y Fee Billings at 2-3, ECF No. 614; 03/05/18 Trans. at 38:15-19 ("[T]he case is *Wyles vs. Aluminaid Int'l, A.G.*, and that is 15-CV-0039-CMA-KMT (sic). That case states that fees for seeking fees, that work, that tasks done in the pursuit of seeking fees cannot be charged for."). *Wyles* held, however, that the defendants in that case were not entitled to fees for the work they dedicated to the motion for attorney fees because the plaintiff's opposition to the motion was substantially justified. *Id.* A defendant is entitled to fees for litigating a § 13-17-201 motion for fees when "'the plaintiff's defense to the motion is substantially frivolous, substantially groundless, or substantially vexatious pursuant to [Colo. Rev. Stat. § 13-17-101].'" *Id.* (quoting *Monell v. Cherokee River, Inc.*, 347 P.3d 1179, 1184 (Colo. App. 2015)). Moreover, since I award attorney fees under 28 U.S.C. § 1927, *see infra*, the fees incurred by Joint Defendants in litigating their attorney fee motion and the amount of seeking award could be included under that statute as well. *See Sangui Biotech Intern., Inc. v. Kappes*, 179 F.Supp.2d 1240, 1246 (D. Colo. 2002) (awarding reasonable attorney fees and costs incurred in filing a motion under § 1927).

[13]In their Summary of Attorneys' Fees Billings filed after the evidentiary hearing and oral argument, Plaintiffs point to one instance in which a paralegal performing services for Cincinnati Insurance Company and the Kemper Group of Defendants was billed at rates of $240 (in 2015) and $250 (in 2016) and the fee was not reduced. Pls.' Summ. Att'y Fee Billings at 5-6. First, I agree with Joint Defendants that Plaintiffs' final submission to the court was authorized on the

581-2. It is telling that some Joint Defendants valued the services of their attorneys to such a degree that they compensated them at substantially higher rates than $625 per hour. *See, e.g.*, Shea Aff. Ex. 14A at 2, Doc. 581-9.[14] But I agree that the rates put forward by Mr. Shea reflect those of lawyers of comparable skill and experience practicing in this District at present. *See Ramos*, 713 F.2d at 555.

Plaintiffs challenge $625 as the maximum rate for fees in this case claiming that the purpose of fee reimbursement is to attract competent counsel, not any counsel Defendants wish. As I explained above, if Joint Defendants have sought the Cadillac of legal representation, it is because they reasonably viewed such representation as necessary under the circumstances and were willing to pay for it. Plaintiffs fail to identify a rate at which other counsel of comparable skill and experience would have represented Defendants and achieved the same outcome. Specifically, they do not reference any factually similar, contemporaneous cases in which courts in this region assigned a lower rate to such experienced counsel.

---

basis that it would contain summaries of previously presented information and not additional argument. 03/05/18 Trans. at 55:13-56:7. Any such issues should have been raised in the prior briefing or, at the very least, in examining Mr. Shea at the evidentiary hearing. Joint Defendants were not authorized nor required to respond to this additional argument. And, without their response, I cannot conclusively determine that the fees are unreasonable or erroneous. *See* Shea Aff. Ex. 7B 09/25/14 Invoice at 3-4, 16-18, ECF No. 581-4 (documenting that many of the paralegal's hours were billed at a rate of zero as well). Second, even if the paralegal's rate is reduced to the $180 Mr. Shea reported, Shea Aff. Ex. 7 at 2, ECF No. 581-4; *id.* Ex. 13 at 2, ECF No. 581-8, the fee for all of the services performed by the paralegal is only reduced by $81.20 for each client group. Plaintiffs make no effort to perform this calculation for me, and their "summaries" fail to even record the discrepancy, if there is one. *See* Pls.' Summ. Att'y Fee Billings Ex. 14 at 26. It is exactly the type of challenge that requires me to check the calculations in every line of every invoice and transforms the attorney fee determination into a second major litigation. Nevertheless, I reduce the fee requested by Cincinnati Insurance Company and the Kemper Group Defendants by $81.20.

[14]Plaintiffs claim Joint Defendants have "enhanced" their fees to reach their hourly rates. There is no indication that counsel "enhanced" their fees, but there is more than a sufficient basis for finding that the attorneys charged reasonable rates based on their experience and the work performed.

Again, Plaintiffs argue that Defendants did not achieve complete success because all but one of their motions to dismiss were denied as moot. Defendants were forced to present various motions because Plaintiffs asserted their claims against such a diverse range of defendants, some of whom were not even involved in the sale of homeowners' insurance. *See, e.g.*, Allianz Mot. to Dismiss at 2, ECF No. 398. The resultant mootness of certain motions has no bearing on the success achieved by Defendants in this case. "[W]hat matters is the result, and in the instant case, the 'result' for [Defendants] was complete vindication." *Robinson*, 160 F.3d at 1284.

Taking into account the skill of counsel, the prevailing market rates in Denver, the complexity of the case, and the longstanding relationships between many of Joint Defendants and their counsel, I find the rates sought by Joint Defendants, as reduced by Mr. Shea, are reasonable.

D. The Lodestar Amount

Since Joint Defendants have carried their burden of establishing that the hours expended and the rates claimed are reasonable, the lodestar amount is presumed to be a reasonable fee. That amount may be modified, but no request for an enhancement or specific adjustment is made here. By suing a drove of diverse parties, Plaintiffs exposed themselves to liability for a multitude of fees. They have imposed costs on virtually the entire insurance industry, and under the law, they must shoulder the result. Joint Defendants are, therefore, entitled to their attorney fees against Plaintiffs in the amounts set forth in the table below.

| Defendant(s) | Award Amount |
|---|---|
| All America Insurance Company; Central Mutual Insurance Company | $36,193.31 |
| Allianz Life Insurance Co. of North America | $205,228.00 |
| American Family Mutual Insurance Company | $157,303.00 |
| Auto-Owners Insurance Company; Owners Insurance Company, erroneously named as Owners Insurance, d/b/a Auto-Owners Insurance d/b/a Home-Owners Insurance | $61,938.80 |
| The Chubb Corporation; Chubb National Insurance Company; Chubb Services Corporation; Great Northern Insurance Company; Pacific Indemnity Company; Vigilant Insurance Company; Federal Insurance Company | $78,320.50 |
| Cincinnati Insurance Company | $103,814.80 |
| Electric Insurance Company | $53,780.00 |
| Fireman's Fund Insurance Company; Allianz of America, Inc., Allianz Global Risks US; Insurance Company, American Automobile Insurance Company a/k/a Fireman's Fund; Insurance Company of Missouri, Associated Indemnity Corporation, Fireman's Fund; Insurance Company, and National Surety Corporation | $25,077.10 |
| First American Financial Corporation; First American Property & Casualty Insurance Company | $153,723.00 |
| Grange Insurance Association | $15,705.00 |
| GuideOne Mutual Insurance Company | $30,393.00 |
| Kemper Corporate Services, Inc.; Kemper Corporation; Unitrin Auto and Home Insurance Company; Unitrin Direct Property & Casualty Company | $103,285.80 |
| McKinsey & Company, Inc.; McKinsey & Company, Inc. Washington D.C. | $248,047.00 |
| National Casualty Company; Nationwide Affinity Insurance Company of America; Nationwide Insurance Company of America; Nationwide Mutual Insurance Company | $174,686.95 |
| Sentry Insurance a Mutual Company | $21,025.00 |
| United Services Automobile Association; USAA Casualty Insurance Company | $128,919.00 |

## II. Personal Liability under 28 U.S.C. § 1927

The last matter I left unsettled in my order granting Joint Defendants their attorney fees against Plaintiffs is whether Plaintiffs' counsel should be held personally responsible for their fees as well. Under 28 U.S.C. § 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Tenth Circuit has held that § 1927 does not require a finding of bad faith and that "any conduct, that 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court,' is sanctionable." *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1202 (10th Cir. 2008) (quoting *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987) (en banc)). This is an "extreme standard" and "a court should make such an award only in instances evidencing a serious and standard disregard for the orderly process of justice." *Aerotech, Inc. v. Estes,* 110 F.3d 1523, 1528 (10th Cir. 1997) (internal quotation marks and citation omitted). The purpose of § 1927 is to incentivize attorneys to "regularly re-evaluate the merits of their claims and avoid prolonging meritless claims." *Steinert v. Winn Group, Inc.,* 440 F.3d 1214, 1224 (10th Cir. 2006).

Recognizing that § 1927 only authorizes sanctions in extreme cases, I find Plaintiffs' counsel, Mr. Josue Hernandez, has without a doubt multiplied these proceedings unreasonably and vexatiously. Examples of this behavior are his refusal to acknowledge that the complaint was deficient under Federal Rule of Civil Procedure 8, his incessant filing of absurdly lengthy and legally incorrect briefs,[15] and his insistence on pursuing the case even after my dismissal order.

---

[15]Mr. Hernandez had tempted me more than once to sanction him for his erroneous articulation of legal standards. *See, e.g.*, n.12, *supra*; Brief Responding at 27 (stating a standard for the award

Mr. Hernandez did not officially enter his appearance in this case until October 17, 2014, but the record is clear that he had an active role in the case prior to that date. *See* USAA & USAA CIC Mot. Dismiss at 2-4, ECF No. 223 (documenting communications between Defendants' counsel and Mr. Hernandez in August 2014 regarding the failure of the Amended Complaint to present a short and plain statement of relief). Section 1927 does not require that the attorney multiplying the proceedings be counsel of record to be sanctioned, and it would be improper to incentivize attorneys to delay entering an appearance in order to avoid liability for their unreasonable and vexatious conduct.

As set forth in Joint Defendants' Reply in support of their original motion for attorney fees and the first motion to dismiss filed in this case, several defendants attempted to confer with Mr. Hernandez concerning the First Amended Complaint's failure to comply with Federal Rule of Civil Procedure 8. Reply Att'y Fee Mot. at 5-6, ECF No. 523; USAA & USAA CIC Mot. Dismiss at 2-4. Specifically, Evan Stephenson, counsel for several Defendants, communicated with Mr. Hernandez before a motion to dismiss the complaint pursuant to Rule 8 was filed. *Id.* Mr. Hernandez twice indicated that Plaintiffs opposed dismissal on that basis and then neglected to respond further, leading to the filing of the motion to dismiss by Defendants United Services Automobile Association ("USAA") and USAA Casualty Insurance Company on August 19, 2014. Before *Hoffman v. United Fire Group, Inc.* was removed and consolidated into this case, the Amended Complaint Mr. Hernandez filed in state court was stricken *sua sponte* by Colorado District Court Judge John Madden for "violat[ing] the intent of the Colorado Rules of Civil Procedure in the extreme." *Hoffman v. United Fire Group, Inc.*, No. 14-cv-01884-JLK, at 1-2 (D.

---

of fees under § 1927 based on a Second Circuit case that has <u>not</u> been endorsed by the Tenth Circuit with respect to § 1927 and that is in direct contravention to *Braley*, 832 F.2d at 1512, a controlling Tenth Circuit case decided <u>en banc</u>).

Colo. July 7, 2014), ECF No. 7 (State Court Order observing: "The Plaintiffs filed a sixty-three page Amended Complaint, including four-hundred twenty three numbered paragraphs with more than two hundred additional parts and subparts, raising ten claims for relief . . . . The excessive length of the Amended Complaint could serve only to unnecessarily increase costs and generate animosity between the parties."). Mr. Hernandez should have known that a similar complaint that was over four times as long would likewise run afoul of the Federal Rules of Civil Procedure. He refused, however, to acknowledge the deficiencies in the complaint filed here and chose to proceed with the case. In doing so, Plaintiffs' counsel began his run of unreasonably and vexatiously multiplying these proceedings.[16]

It continued with his relentless submission of inappropriate filings, as detailed throughout this Order, including the following.

- The complaint was amended two additional times after August 19, 2014 (ECF Nos. 339, 380). The final complaint was filed just nine days before Defendants' motions to dismiss were due and was still 260 pages and 1,363 paragraphs.

- Mr. Hernandez filed a 40-page motion for extension of time to respond to the motions to dismiss (ECF No. 421) and a 47-page reply in support of that motion (ECF No. 429). I repeat that the motion was the lengthiest one I had ever seen or heard of and, to me, "illustrates a system gone mad." 01/29/15 Trans. at 2:17-22.

- After I dismissed the case in its entirety, Mr. Hernandez filed Plaintiffs' first motion for relief from the final judgment, which—with its exhibits and errata—totaled

---

[16]The decision to limit Mr. Hernandez's liability to attorney fees incurred post-August 19, 2014, is further supported by *Steinert*, 440 F.3d at 1224, in which the Tenth Circuit held that § 1927 covers only the multiplication of the proceedings and not the initiation of meritless litigation. Nevertheless, the court there did not address whether it is appropriate to sanction counsel who have filed the same meritless complaint in other courts. *Id.* at 1225 n.12.

approximately 1,100 pages (ECF Nos. 481, 485-88). All of these filings were stricken (ECF No. 494).

The vexatiousness of the submissions generally was not in what they purported to be; it was in their substance and form. I have described them as prolix, meandering, full of unfounded supposition and speculation, repetitive and convoluted almost to the point of being maddening, etc. I need not say more. The notices and errata alone have required Defendants to turn circles and backflips. Through his involvement in this case, Plaintiffs' counsel has evidenced a serious and standard disregard for the orderly process of justice. *See Aerotech*, 110 F.3d at 1528.

"To excuse objectively unreasonable conduct by an attorney would be to state that one who acts 'with an empty head and a pure heart is not responsible for the consequences.'" *Braley*, 832 F.2d at 1512 (quoting *McCandless v. Great Atlantic and Pacific Tea Co.*, 697 F.2d 198, 200 (7th Cir. 1983)). I cannot permit such an outcome. Consequently, I conclude Mr. Hernandez is liable for fees under 28 U.S.C. § 1927 from August 19, 2014, forward. This finding is limited to fees incurred in defending the action at the district court level.[17] Thus, if Joint Defendants continue to seek an award against Plaintiffs' counsel personally, they must submit on or before February 6, 2019, the attorney fees—which I have found to be reasonable—they incurred after August 19, 2014, and related to district court proceedings only.[18]

---

[17]While I find it appropriate to limit the award of fees under § 1927 to those related to district court proceedings, the Court of Appeals has indicated the conduct of Mr. Hernandez on appeal would justify a similar sanction. *Snyder v. ACORD Corp.*, Nos. 16-1111 and 16-1215, at 2-4 (10th Cir. May 26, 2017) (show cause order from Court of Appeals stating that "Mr. Hernandez has repeatedly and unreasonably increased the cost of litigation in these appeals" and providing examples).

[18]Joint Defendants represented at the March 2018 hearing that the fees incurred in connection with the Tenth Circuit appeal totaled approximately $330,000. 03/05/18 Trans. at 22:2-9. This amount should be excluded in their coming submission.

## IV. Conclusion

I am sensitive to the impact this Order will have both on Plaintiffs and Mr. Hernandez, and I do not issue it lightly. As Mr. Hernandez suggested at the March 2018 hearing, individuals' health, families, and even dogs have been affected by this litigation. I cannot ignore, however, the obstinate pattern of behavior exhibited by Mr. Hernandez nor his and the plaintiffs' complete disregard for the consequences of that behavior. This ship could have been abandoned at many points along the way, but it was not. Plaintiffs, with Mr. Hernandez at the helm, have forced Defendants, not just Joint Defendants, to expend enormous sums defending this action due to their senseless and ineffective pleadings and filings. The apparent aim of this litigation was to ensure fair business dealings by the insurance industry—unquestionably an honorable goal, but it has instead unjustifiably cost the industry millions of dollars, a burden that is likely to be passed on to the insureds it ostensibly sought to protect.

Accordingly, as set out in the table above, Joint Defendants are awarded their attorney fees to be paid by Plaintiffs under Colorado Revised Statute § 13-17-201. If Joint Defendants seek to recover their fees from Plaintiffs' counsel pursuant to 28 U.S.C. § 1927 as well, they are ORDERED to submit on or before February 6, 2019, the amount of the attorney fees each incurred after August 19, 2014, and related to district court proceedings only. Since I have already determined the fees that were reasonably and necessarily incurred, upon receipt of Joint Defendants' submission, each will be awarded the calculated amount against Plaintiffs' counsel, Josue Hernandez, and will be entitled to recover that portion of its total fee award from him or Plaintiffs.

DATED this 24th day of January, 2018.

_John L. Kane_
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE